(38 P.3d 753)
No. 86,791

In the Matter of the Marriage of DEBORAH S. WHERRELL, *Appellee,* and WESLEY R. WHERRELL, *Appellant.*

Opinion filed January 25, 2002.

*Frank D. Taff,* of Topeka, for appellant.

*Chris R. Davis,* of Phelps-Chartered, of Topeka, for appellee.

Before GREEN, P.J., KNUDSON, J., and STEPHEN D. HILL, District Judge, assigned.

HILL, J.: Wesley Wherrell appeals the district court's decision awarding Deborah Wherrell one-half of the payment he received upon his discharge from the Navy. We reverse and remand.

A review of the facts is necessary to understand the issues that arise in this case. The Wherrells were married in October 1976, while Wesley was a member of the United States Navy. In 1995, he was placed on temporary disability retirement. At that time, Wesley was found 10% disabled due to a respiratory condition. Deborah filed for divorce in 1998, which was granted. Their journal

entry of divorce contained this provision: "[Deborah shall receive] 50 percent (50%) of the disposable retired or retainer pay otherwise payable to respondent due to his military service."

Wesley received monthly retirement checks and monthly disability checks until his discharge from the Navy in 1999. According to his discharge letter, Wesley would receive severance pay. Wherrell also received a Form 1099-R from the United States Department of the Treasury showing the distribution of a retirement plan and how much money was withheld for taxes. The form also contained the following information: "Call . . . if you have a question about your retired 1099-R."

Then, in August 2000, Deborah filed a motion to enforce the divorce decree. She claimed that since Wesley received $1,300 a month in disability pay, she should have received $650. In fact, Wesley only sent Deborah $400 a month from September 1998 through November 1999. Deborah also claimed that Wesley received a $60,910.15 check in December 1999 for his retirement. Deborah asked the court to order Wesley to pay her $3,750 as her share of the back disability pay and $30,455.07 from the retirement pay. Wesley argued to the district court that the money he received was disability severance pay and not divisible in the divorce.

Our standard of review for the division of property is based upon an abuse of discretion. Appellate courts have held consistently that trial courts have wide latitude in dividing the assets of divorcing parties. Ordinarily the trial court's ruling will not be disturbed unless there is a clear showing of abuse. *In re Marriage of Callaghan,* 19 Kan. App. 2d 335, 340, 869 P.2d 240 (1994). A finding of abuse occurs if no reasonable person would adopt the trial court's view. It cannot be said a trial court abused its discretion if reasonable people could differ as to the soundness of the trial court's action. *Wood v. Groh,* 269 Kan. 420, 429, 7 P.3d 1163 (2000).

The parties differ about the nature of the lump sum payment made to Wesley. Wesley contends that the payment was a *disability* check and not subject to division in a divorce. Deborah contends the payment was a retirement check and can be divided.

The distinction between a retirement payment and a disability payment is important. Our United States Supreme Court ruled in

*McCarty v. McCarty,* 453 U.S. 210, 235-36, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981), that state courts could not distribute any portion of a military nondisability retirement pension to the former spouse of a military retiree. In 1982, in reaction to the *McCarty* decision, Congress enacted the federal Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408 (2000). According to that statute, "[a] court may treat disposable retired pay payable to a member . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1) (2000).

When it created the Spouses' Protection Act, Congress specifically excluded from the definition of "disposable retired pay" *disability* benefits deducted from the retired member's pay. See 10 U.S.C. § 1408(a)(2)(C) (2000). The United States Supreme Court followed with *Mansell v. Mansell,* 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989), where it ruled that the Spouses' Protection Act does not allow state courts to divide veterans' disability benefits in marital property settlements under state law. 490 U.S. at 594-95.

This court ruled in *In re Marriage of Pierce,* 26 Kan. App. 2d 236, 982 P.2d 995, *rev. denied* 268 Kan. 847 (1999), that the trial court in that case was correct when it ruled that the retired serviceman was not required to pay disability benefits to his former spouse. 26 Kan. App. 2d at 240.

In this case, the district court noted that the *Pierce* decision did not control this issue. The district court ruled that disability benefits were not at issue. As a result, the district court concluded that the benefits were retirement pay from the Navy. Under the divorce decree Deborah was entitled to 50 percent of the lump sum settlement paid to Wesley due to his military service and his retirement therefrom. The district court, however, was incorrect in its view that the lump sum payment to Wherrell was a retirement payment because Wesley did not have sufficient time in the service to retire.

A review of the federal scheme of payments to servicemen and women is important to this decision. Under 10 U.S.C. § 1210(e) (2000), if a service member's physical disability is determined to

be less than 30 percent after a physical examination, and he or she has worked less than 20 years for the service, his or her name has to be removed from the temporary disability retired list. That person can then be separated from the military under 10 U.S.C. § 1203 (2000).

10 U.S.C. § 1203 (2000) provides that after a finding of unfitness due to physical disability, the service member may be separated from the military with *disability severance pay*. The disability severance pay is computed under 10 U.S.C. § 1212(a) (2000): "Upon separation from his armed force under section 1203 or 1206 of this title, a member is entitled to disability severance pay." But, before this can occur, the military must make certain determinations about the disability.

The military must find:

"(1) the member has less than 20 years of service computed under section 1208 . . .;

"(2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence;

"(3) based upon accepted medical principles, the disability is or may be of a permanent nature; and

"(4) either—

. . . .

(B) the disability is less than 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination, and the member has at least eight years of service computed under section 1208 of this title, or

(C) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination, the disability was neither (i) the proximate result of performing active duty, (ii) incurred in line of duty in time of war or national emergency, nor (iii) incurred in line of duty after September 14, 1978, and the member has less than eight years of service computed under section 1208 of this title on the date when he would otherwise be retired under section 1201 of this title or placed on the temporary disability retired list under section 1202 of this title." 10 U.S.C. § 1203 (2000).

What this means in Wesley's case is that when he was informed he was first placed on the temporary disability retired list and his disability rating fell below 30 percent, he *might* have been entitled to retirement pay or separation with disability severance pay.

Finally, in July 1999, the Physical Review Board released its report on Wesley. The Board, tracking the language of 10 U.S.C. § 1203, arguably had the requirements of the section in mind when writing the report. The Board found Wesley to be 10 percent disabled from desquamative interstitial pneumonitis. The Board also found that the disability happened while he was entitled to receive basic pay, the disability did not occur during an unauthorized absence, the disability was not the result of intentional misconduct or neglect, and the disability did occur after September 14, 1978. Finally, the Board recommended that Wesley be separated from the military with severance pay.

In light of these facts, the trial court's decision was not reasonable. It appears to us that in July 1999, the military recommended that Wesley be separated with *disability severance pay*. The military tracked the language of the statute that entitled Wesley to disability severance pay, and in October 1999, Wesley received a letter from the Navy informing him he was discharged from the Navy and would be receiving severance pay. Some time later that fall, Wesley received a check from the Navy.

10 U.S.C. § 1201 (2000) defines how a service member qualifies for retirement benefits. Wesley would have to have been a member of the Navy for at least 20 years or be disabled at least 30 percent. Wesley simply cannot meet these requirements. He was only in the Navy for 16½ years, and he was only 10 percent disabled. Wesley was ineligible to receive Navy retirements benefits.

Since the benefits awarded to Wesley were disability benefits, they cannot be divided in the divorce following the mandates of *Mansell*, 490 U.S. at 594-95 and *Pierce*, 26 Kan. App. 2d 236, Syl. ¶ 3. We find that the trial court's decision that Deborah was entitled under the divorce decree to 50 percent of the lump sum payment was incorrect.

The remaining issues are moot.

Reversed and remanded.

KNUDSON, J., dissenting: I respectfully dissent from the majority's holding in this appeal. The question in *Mansell v. Mansell*, 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989), was whether

state courts, pursuant to 10 U.S.C. § 1408 (2000), could treat as divisible property upon divorce, military retirement pay waived by the retiree in order to receive veterans' disability benefits under 38 U.S.C. §§ 1110, 1131 (1994). Here, it is uncontroverted that Wesley's lump sum settlement does not constitute veterans' disability benefits under 38 U.S.C., nor has he waived any retirement pay.

The district court in a well-reasoned opinion found in material part:

"Mr. Wherrell is not receiving veterans disability benefits. In fact, Mr. Wherrell testified that he does not intend to apply for them and that even if he would apply for such benefits, he would receive no more than a ten percent disability. In this instance, Mr. Wherrell has not waived military retirement pay in order to receive veterans disability benefits. He received severance pay relating to his separation from naval service. As he was initially informed when placed on the [Temporary Disability Retired List], this severance pay was available because of his eligibility under the Temporary Early Retirement Authority. The nature of the benefits paid were defined by the terms of his placement on the Temporary Early Retired List on March 29, 1995 and the election he made when faced with returning to active service or retiring with separation severance pay. The funds are subject to this Court's jurisdiction and may be divided."

The district court correctly made the subtle distinction required under federal law, distinguishing veterans' disability benefits from retirement severance pay based upon disability. Wesley was afforded early retirement from the military because of disability with his severance pay calculated under 10 U.S.C. § 1212(a) (2000). Appropriately, Wesley received a federal income tax form 1099-R because the distribution was not exempt from the payment of income taxes. I completely agree with the district court that neither 10 U.S.C. § 1408(a)(4)(B) nor the *Mansell* holding preclude division of Wesley's lump sum retirement payment by the district court. I would affirm the district court upon this issue and decide the remaining issues presented on their respective merits.