No. 86,791

In the Matter of the Marriage of Deborah S. Wherrell, *Appellee,* and Wesley R. Wherrell, *Appellant.*

(58 P.3d 734)

Opinion filed December 6, 2002.

*Frank D. Taff,* of Topeka, argued the cause and was on the brief for appellant.

*Chris R. Davis,* of Phelps, Chartered, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Lockett, J.: This case comes before the court on a petition for review pursuant to K.S.A. 20-3018(c). Based upon the terms of the journal entry of divorce, the district court awarded ex-wife 50 percent of the military severance pay received by her ex-husband, plus prejudgment interest. Ex-husband appealed, contending the military severance pay was a disability benefit, not a retirement benefit subject to division. Ex-wife asserted the district court was correct in finding she (1) was entitled to 50 percent of the military severance pay; (2) was entitled to prejudgment interest; and (3) was entitled to relief under K.S.A. 60-260(b)(6). The Court of Appeals determined the severance pay was an indivisible disability benefit and reversed the district court.

In 1976, appellant Wesley Wherrell enlisted in the United States Navy. Appellee Deborah Wherrell and Wesley were married in October of 1976. In July 1994, Wesley was found fit for only limited duty as a result of interstitial pneumonitis (a respiratory disease), which was directly related to his military service. After a review by the Record Review Panel of the Navy Physical Evaluation Board in March 1995, Wesley was placed on the "Temporary Disability Retired List" (TDRL). Wesley had been diagnosed with desquamative interstitial pneumonitis and given a 30 percent disability rating. In July 1995 and in response to Wesley's compensation claim, the Department of Veterans' Affairs (VA) assigned Wesley a 10 percent disability rating because of his condition. The VA informed Wesley that he was entitled to $89 per month as compensation for his disability.

After nearly 22 years of marriage, Deborah filed for divorce in May 1998. The divorce was finalized on August 18, 1998. The agreed-upon journal entry of divorce contained the following provision regarding Wesley's military retirement:

"6. That petitioner [Deborah] should be awarded fifty percent (50%) of the disposable retired or retainer pay otherwise payable to respondent due to his military service; and that a qualified domestic relations order should be issued to the payor of such retired or retainer pay pursuant to the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. [§1401 *et seq.*], as amended, to effect such award."

The journal entry of divorce also provided that Deborah waived any potential right to maintenance. The waiver of maintenance was the result of Wesley agreeing to give Deborah 50 percent of his retirement or retainer pay. From the record, it appears that at the time of the divorce Wesley was receiving $795.51 per month in military retirement and $94 per month in disability. From August 1998 until October 1999, Wesley paid Deborah 50 percent of his retirement pay.

By letter dated October 12, 1999, Wesley was notified that he had been removed from the TDRL and "discharged from the naval service by reason of physical disability with severance pay effective 28 September 1999." Wesley then informed Deborah that she

would not receive additional payments because he was no longer receiving military retirement pay.

In August 2000, Deborah discovered a 1099-R addressed to Wesley from the Defense Finance and Accounting Center dated December 16, 1999. The 1099-R reported a gross distribution of $60,910.15. Federal income tax withheld was reported as $15,100.39.

On August 25, 2001, Deborah filed a motion to enforce paragraph six of the journal entry of divorce. Deborah alleged she was entitled to 50 percent of the $60,910.15. Wesley responded, contending Deborah was not entitled to this money because it was indivisible disability severance pay.

After a hearing, the district court found that Wesley had received a lump sum retirement benefit totaling $57,000 rather than $60,910.15 as Deborah alleged. The district court awarded Deborah $21,435 plus prejudgment interest at 10 percent per annum from November 1999.

Wesley filed a motion for amendment of the judgment or for additional findings and amendment of the judgment, contending the district court's award of prejudgment interest was erroneous and that the specific grounds for awarding prejudgment interest were required to be stated. The district court denied the motion. Wesley filed a timely notice of appeal. Deborah did not file a cross-appeal; therefore, the district court's determination as to the amount of the lump sum stands.

The Court of Appeals found that because Wesley was not eligible to retire from the Navy, the district court had incorrectly decided that the lump sum received by Wesley was a divisible military retirement benefit. It then determined that the payment was a disability severance benefit and reversed the district court. *In the Matter of the Marriage of Wherrell*, 30 Kan. App. 2d 166, 38 P.3d 753 (2002). This court granted Deborah's petition for review.

We note that the district court is vested with broad discretion in adjusting the property rights of parties involved in divorce actions and that the exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse. *In re Marriage of Sadecki*, 250 Kan. 5, 8, 825 P.2d 108 (1992); *Powell v. Powell*, 231 Kan. 456,

459, 648 P.2d 218 (1982). The Court of Appeals cited and used this standard in reviewing the district court's decision. *Wherrell*, 30 Kan. App. 2d at 167.

The question of whether the lump sum payment to Wesley was divisible military retirement or indivisible military disability determines whether the district court had jurisdiction to order the division of the payment pursuant to the journal entry of divorce. The existence of jurisdiction is a question of law over which this court's scope of review is unlimited. *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 414, 997 P.2d 681 (2000). Thus, the answer involves a mixed question of law and fact. Where a court reviews a mixed question of law and fact, it applies the substantial competent evidence test to the factual findings and determines by unlimited review whether the findings support the legal conclusions. *State Bd. of Nursing v. Ruebke*, 259 Kan. 599, 611, 913 P.2d 142 (1996).

In 1982, Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. §1408 (2000). The USFSPA was enacted in response to the decision in *McCarty v. McCarty*, 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981), in which the United States Supreme Court precluded state courts from ordering the distribution of any military retirement pay to a former spouse. *Mansell v. Mansell*, 490 U.S. 581, 584, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989). The USFSPA authorizes state courts to treat "disposable retired" or "retainer" pay as either the sole property of the member or former member of the armed forces or the joint property of the member and his spouse in accordance with the law of the jurisdiction. See 10 U.S.C. § 1408(a)(7) and (c)(1).

In *Mansell*, the United States Supreme Court was faced with determining whether the state courts had the authority under the USFSPA to divide up total military retired pay when the retiree waived a portion of the retired pay in order to receive veterans' disability benefits. The Court decided in the negative, relying upon the USFSPA's specific exemption of amounts deducted from retired pay in order to receive compensation under Title 38 of the

United States Code (Veterans' Benefits) from the definition of "disposable retired pay." 490 U.S. at 589.

In arriving at its decision, the *Mansell* Court noted that for the purpose of avoiding double payment, a military retiree is required to waive a corresponding amount of his or her military retirement in order to receive veterans' disability benefits. 490 U.S. at 583. See 38 U.S.C. § 5305 (2000) (previously 38 U.S.C. § 3105). Because disability benefits are exempt from taxation resulting in higher after-tax income for retirees, the Court also noted that waivers are common. 490 U.S. at 583-84. See 38 U.S.C. § 5301(a) (2000) (previously 38 U.S.C. § 3101[a]).

Our Court of Appeals addressed a similar issue in *In the Matter of the Marriage of Pierce*, 26 Kan. App. 2d 236, 982 P.2d 995, *rev. denied* 268 Kan. 887 (1999). The *Pierce* court was faced with determining whether the petitioner was entitled to a share of her ex-husband's military retirement benefits under a divorce settlement agreement when the benefits were subsequently converted into disability benefits. The petitioner requested that the district court either compel her ex-husband to reinstate his military retirement or order him to pay the amount she would have received if the benefits were still classified as retirement benefits. The district court refused to grant the petitioner's request. The ex-wife appealed.

The *Pierce* court, relying upon the United States Supreme Court's decision in *Mansell*, held:

"*Mansell* makes it perfectly clear that the state trial courts have no jurisdiction over disability benefits received by a veteran. The trial court in this case cannot order [respondent] to change the payments back to retirement benefits, and it cannot order him to pay his disability benefits to [petitioner]. We conclude the court may not do indirectly what it cannot do directly." 26 Kan. App. 2d at 240.

In this action, the district court noted *In re Marriage of Pierce* and determined that *Pierce* did not apply because *Pierce* involved the division of veterans' disability benefits and Wesley had not received veterans' disability benefits. The district court concluded:

"In this instance, Mr. Wherrell has not waived military retirement pay in order to receive veterans disability benefits. He received severance pay relating to his separation from naval service. As he was initially informed when placed on TDRL,

this severance pay was available because of his eligibility under the Temporary Early Retirement Authority. The nature of the benefits paid were defined by the terms of his placement on the Temporary Early Retired List (sic) on March 29, 1995 and the election he made when faced with returning to active service or retiring with separation severance pay. . . ."

. . . .

"[I]t is clear that based upon initial placement on TDRL status that Mr. Wherrell would have certain options if he were subsequently removed from the TDRL and separated from service. In this regard, he elected separation severance pay."

The district court found that the lump sum was a divisible military retirement benefit and that Deborah was entitled to 50 percent of the lump sum payment.

The Court of Appeals found the district court's decision unreasonable and reversed the district court. In reaching its decision, the court noted that Congress specifically excluded disability benefits deducted from the retired member's pay from inclusion in the definition of "disposable retired pay," citing 10 U.S.C. § 1408(a)(2)(C) as authority for this exclusion. *In re Marriage of Wherrell*, 30 Kan. App. 2d at 168. It is important to note that the provision referred to is included in the definition of what constitutes a "court order" but does not define what is excluded from "disposable retired pay." The Court of Appeals appears to have been referring to 10 U.S.C. § 1408(a)(4)(C), later set forth in this opinion. The Court of Appeals further found that Wesley had not met the requirements for retirement because he did not have either 20 years in the service or a 30 percent disability rating. Relying upon 10 U.S.C. § 1201 (2000), the panel concluded that Wesley received an indivisible disability benefit under 10 U.S.C. § 1203 (2000). *In re Marriage of Wherrell*, 30 Kan. App. 2d at 170.

Judge Knudson dissented, noting that *Mansell* dealt only with the waiver of veterans' disability benefits under Title 38 of the United States Code, Wesley's lump sum payment was not a veterans' disability benefit under Title 38, and Wesley did not waive a portion of his retirement pay. Relying upon the fact Wesley received a 1099-R form indicating the distribution was not tax exempt, Judge Knudson found the district court's opinion to be well-reasoned and opined that he would have affirmed the district court

and addressed the remaining issues on their merits. *In re Marriage of Wherrell*, 30 Kan. App. 2d at 171.

As he did before the Court of Appeals, Wesley asserts the district court erred in finding that *In re Marriage of Pierce* did not control; therefore, he contends the district court's award of 50 percent of the lump sum to Deborah was clearly erroneous. To support his assertion, Wesley points out that the USFSPA excludes Chapter 61, 10 U.S.C. § 1201 *et seq.*, disability benefits from "disposable retired pay," under 10 U.S.C. § 1408(a)(4)(C).

Deborah argues that the district court correctly distinguished *In re Marriage of Pierce* from this case. To support her argument that the Court of Appeals erred in finding that the district judge abused his discretion in determining the benefits were divisible, and to demonstrate that Wesley's benefits were divisible retirement benefits, Deborah relies upon the evidence before the district court and the statutes governing retirement and separation for physical disability, 10 U.S.C. § 1201 *et seq.*

The USFSPA defines disposable retired pay:

"The term 'disposable retired' pay means the total monthly retired pay to which a member is entitled less amounts which—

. . . .

(B) are deducted from the retired pay of such member . . . as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38;

(C) in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was place on the temporary disability retired list)." 10 U.S.C. § 1408(a)(4).

As provided in the notice to Wesley, the TDRL was to be administered in accordance with 10 U.S.C. § 1210 (2000). This section provides for a physical examination to be administered every 18 months and for a final determination to be made in the case of each member on the list after the passage of 5 years. See 10 U.S.C. § 1210(a) and (b). If the disability still exists at the expiration of the 5 years, as it did in this case, the disability is considered permanent and stable. See 10 U.S.C. § 1210(b). If the member's permanent disability is less than 30 percent, as it was in this case, or

if the member has less than 20 years of service, the member's name is removed from the list and the member is "separated" under either § 1203 or § 1206. See 10 U.S.C. § 1210(e). If the member has at least 30 percent disability or 20 years of service, his or her name is removed from the list and he or she is retired under either § 1201 or § 1204. See 10 U.S.C. § 1210(c) and (d). In applying 10 U.S.C. § 1210(c), (d), and (e), the Court of Appeals' reversal of the district court was controlled by its belief that Wesley was ineligible to retire because he had not served 20 years in the Navy.

Neither party briefed the issue of whether Wesley was eligible for retirement. Although the fact Wesley did not serve 20 years might be relevant to the determination of whether the benefits are retirement or disability, it is not controlling. The appropriateness of the Navy granting Wesley retirement is not an issue. Rather, the issue is whether the benefits received by Wesley constituted retirement or disability benefits.

We further note that the Court of Appeals' finding that Wesley was ineligible for retirement may also have been inaccurate. Wesley was advised by the Department of the Navy that he was placed on the TDRL during a period in which he "may have been eligible to request retirement under the Temporary Early Retirement Authority (TERA)." The TERA was also referred to in a handwritten note on a form that accompanied notification of Wesley's placement on the TDRL.

The TERA was enacted in 1992 for the purpose of providing "the Secretary of Defense a temporary additional force management tool with which to effect the drawdown of military forces during the active force drawdown period." National Defense Authorization Act for Fiscal Year 1993, Pub. L. No. 102-484 § 4403(a) (codified at note to 10 U.S.C. § 1293). The TERA, among other things, gave the Secretaries of the military branches the authority to lower the number of years of service required for retirement in certain circumstances to 15 rather than 20 years. See Pub. L. No. 102-484 § 4403(b); *Clary v. United States*, 52 Fed. Cl. 390, 393 (2002). The "active force drawdown period" was in effect from the Act's enactment until December 31, 2001. See Departments of

Defense and Energy Appropriations, Pub. L. No. 106-398 § 571(a) (codified at note 10 U.S.C. § 1293).

Neither party nor the Court of Appeals addressed the possibility of Wesley's eligibility for retirement under the TERA. The district court referred to the TERA, noting that Wesley was placed on the TDRL because of his "eligibility" under the TERA. The record does not support a finding that Wesley was eligible for retirement under the TERA; however, it infers that he might have been. We note that the provisions of the TERA cast doubt upon the Court of Appeals' decision that Wesley was not eligible for retirement benefits because he had not served 20 years in the Navy. Because there are not sufficient facts in the record, we cannot determine whether Wesley was retired or eligible for retirement under the TERA. We can determine, however, that the Court of Appeals erred in relying upon this fact in reversing the district court.

Wesley was notified that while he was on the TDRL he "shall be accorded disability benefits in a temporary retired status as prescribed in 10 U.S.C. 1202 or 1205, as appropriate." Those sections provide:

"Upon a determination by the Secretary concerned that a member described in section 1201(c) of this title would be qualified for retirement under section 1201 of this title but for the fact that his disability is not determined to be of a permanent nature and stable, the Secretary shall, if he also determines that accepted medical principles indicate that the disability may be of a permanent nature, place the member's name on the temporary disability retired list, *with retired pay* computed under section 1401 of this title." (Emphasis added.) 10 U.S.C. § 1202 (2000).

"Upon a determination by the Secretary concerned that a member of the armed forces not covered by section 1201, 1202, or 1203 of this title would be qualified for retirement under section 1204 of this title but for the fact that his disability is not determined to be of a permanent nature and stable, the Secretary shall, if he also determines that accepted medical principles indicate that the disability may be of a permanent nature, place the member's name on the temporary disability retired list, *with retired pay* computed under section 1401 of this title." (Emphasis added.) 10 U.S.C. § 1205 (2000).

From the plain language of the provisions, it appears that Wesley was on the TDRL and receiving "retirement pay." It also appears that the only method of being placed on the TDRL is through

either § 1202 or § 1205, both of which require that the member be eligible for *retirement* under § 1201 or § 1204. This conclusion is reasonable, due to the fact that the list is entitled the "Temporary Disability *Retired* List." (Emphasis added.)

Deborah testified that when Wesley informed her that he would no longer be receiving retirement benefits, Wesley also stated that he had the choice to either serve the final 2 years of service that he had left remaining or to receive a settlement. Wesley testified that he had no choice and that the Navy had made the choice for him. He also testified that he did not intend to file a claim for veterans' benefits because the amount of his severance pay would be offset by the amount of veterans' benefits he was entitled to receive upon application to the VA for such benefits. See 38 U.S.C. § 5305 (2000).

Wesley's notification of his honorable discharge and removal from the TDRL stated that he was being "discharged from the naval service by reason of physical disability with severance pay." Included with this notification was an enclosure entitled "INFOR-MATION SHEET—SEPARATION FROM TDRL." The enclosure contained the following provisions of interest:

"1. The following information is intended to help you understand the preliminary finding of the Physical Evaluation Board (PEB) and to assist you with your decision whether to accept the finding.

"2. The PEB made a preliminary finding that you remain unfit for military service pay by reason of physical disability. Because your combined percentage of disability is not less than 30%, you are ineligible to remain on the TDRL and are to be separated and paid disability.

. . . .

(2) **You will receive a disability severance check** from the Defense Finance and Accounting Center **AFTER YOU ARE DISCHARGED.** Severance pay is TWO MONTHS BASE PAY MULTIPLIED BY YEARS OF TOTAL ACTIVE SERVICE. NOT TO EXTEND 12 YEARS [*sic*] an individual with less than six months creditable active service is not eligible for severance pay.

. . . .

"3. If you have not already done so, you may apply to the Department of Veterans' Affairs (VA) for disability benefits. Any VA eligibility already established or which may be established will not be affected by the disposition of your case by the Navy. **HOWEVER, SEVERANCE PAY WILL BE DEDUCTED FROM ANY VA COMPENSATION FOR WHICH YOU MIGHT BE ELI-GIBLE.**"

The formula set forth for computing Wesley's severance pay is similar to the formula set forth in 10 U.S.C. § 1212 (2000). Pursuant to 10 U.S.C. § 1210(c),(d) and (e), payment received after removal from the TDRL is only computed under § 1212 (disability severance pay) if the disability is determined to be less than 30 percent and the years of service are less than 20. See 10 U.S.C. §§ 1203 and 1206. If Wesley would have had a 30 percent or greater disability or been in the service for at least 20 years, his payment should have been calculated under 10 U.S.C. § 1401 (2000) (computation of retired pay). See 10 U.S.C. §§ 1201, 1204, and 1210(c) and (d). This evidence points toward the lump sum payment constituting disability rather than retirement pay.

The inclusion of the lump sum payment on Wesley's 1099-R form may be dispositive. A 1099-R form is the Internal Revenue Service form upon which distributions from pensions, annuities, retirement or profit-sharing plans, IRAs, insurance contracts, etc., are reported. The instructions for filing a 1099-R form specify that amounts that are totally exempt from tax, such as workers compensation and VA benefits, should not be reported on the form. However, payments to military retirees are to be reported on the form. The instructions also indicate that if part of a distribution is taxable and part is tax exempt, the entire distribution should be reported on the 1099-R. See 2001 Instructions for Forms 1099-R and 5498. Military disability benefits are tax exempt pursuant to 26 U.S.C. § 104(a)(4) (2000).

At the hearing before the district court, Wesley stated that he planned to challenge the withholding of federal taxes as indicated on his 1099-R form, relying upon the holding in *St. Clair v. United States*, 778 F. Supp. 894 (E.D. Va. 1991). The result of Wesley's challenge, if any, to the tax withheld is unknown. In *St. Clair*, the plaintiff was discharged with *disability severance pay* under 10 U.S.C. §§ 1203, 1208, and 1212. The plaintiff received a lump sum disability severance payment upon his discharge under § 1212. Subsequently, the plaintiff applied for VA benefits. The VA determined that the plaintiff was 10 percent disabled and deducted the amount of disability severance pay from future VA benefits. The *St. Clair* Court was faced with determining whether the entire

lump sum amount should be included in the plaintiff's gross income for the year. The court noted that documentation of the plaintiff's discharge from the Air Force clearly indicated that the plaintiff was discharged due to physical disability and that the resulting severance payment was for the purpose of compensating the plaintiff for that disability. Thus, the court held that the entire lump sum should have been excluded from the plaintiff's gross income because under 26 U.S.C. § 104(a)(4), amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces are excluded from gross income. 778 F. Supp. 896. Compare *Russell v. Russell*, 520 So. 2d 435, 438 (La. App. 1987), *cert. denied* 490 U.S. 1097 (1989) ("Therefore, because part of the payments defendant received were treated as taxable income by the federal government, it is unlikely that the entire amount paid to defendant consisted of disability retirement pay.").

Prior to 1986, Congress completely excluded any retired pay of a member retired for disability under Chapter 61 of Title 10 to the United States Code from being considered "disposable retired pay." See 10 U.S.C. § 1408(a)(4) (1982). The present definition of "disposable retired pay," however, seems to consider Chapter 61 benefits received by those members *eligible for retirement* as potentially including both disability and retirement benefits, while only recognizing the disability portion of the benefit to be excluded from "disposable retired pay." See 10 U.S.C. § 1408(a)(4)(C). Thus, it is easily inferred that all benefits received pursuant to Chapter 61 are not necessarily disability benefits and that some, if not all benefits, received pursuant to Chapter 61 are capable of being considered "disposable retired pay."

In *Bullis v. Bullis*, 22 Va. App. 24, 36, 467 S.E.2d 830 (1996), the Virginia Court of Appeals, sitting en banc, applied the current definition of "disposable retired pay" to determine that of all the military benefits received under Chapter 61, the only benefits that are excluded from the definition of "disposable retired pay" are the benefits which correspond to the retiree's disability percentage at the time of retirement. This result seems reasonable under the plain language of 10 U.S.C. § 1408(a)(4)(C). If the member is not

entitled to retired pay, however, it would not be appropriate to allow only a portion of his severance pay to be excluded from division under USFSPA. Under that circumstance, the entire Chapter 61 benefit would be excluded from the definition of "disposable retired pay."

Furthermore, Wesley contends that Deborah should have been aware something was not right in terms of the journal entry of divorce when her attempt to set up a qualified domestic relations order (QDRO), as provided for under the USFSPA, failed. See 10 U.S.C. § 1408(d). Deborah testified that her request for the establishment of the QDRO had been denied by the military because Wesley was not permanently retired at the time of the request.

Unfortunately, there are serious factual issues that remain. The district court correctly recognized that the resolution of this issue depends upon whether the benefits were retirement or disability. The district court erred, however, in relying solely upon the fact that these benefits were not veterans' disability benefits in finding that the benefits were divisible retirement benefits. The district court failed to recognize the existence of 10 U.S.C. § 1408(a)(4)(C), which applies to this distribution. It is not surprising the district court did not address 10 U.S.C. § 1408(a)(4)(C) in rendering its finding, because the arguments before the district court did not include specific references to the applicable statutes. It was not until his appeal that Wesley referred specifically to 10 U.S.C. § 1408(a)(4)(C).

The district court's decision that the benefits constituted retirement and not disability was erroneous because the court applied the wrong statutory provision in evaluating the benefits, 10 U.S.C. § 1408(a)(4)(B) instead of 10 U.S.C. § 1408(a)(4)(C). Therefore, we remand the case to the district court. On remand, the district court should examine the facts and the statutory provisions applicable to the lump sum payment Wesley received as military severance pay. The outcome of Wesley's challenge to the withholding of federal taxes on the lump sum, if actually pursued, determines the nature of the benefit received. In the absence of such challenge, Wesley has the burden to come forward with evidence establishing that the lump sum was disability rather than retirement

pay. The 1099-R form introduced in the district court demonstrated that at least a portion of the lump sum was believed to be taxable. Under the circumstances, Deborah has met her initial burden of proof.

Although the district court briefly addressed Deborah's contention that she was also entitled to relief under K.S.A. 60-260(b)(6) and seemed to agree that relief would also be available to Deborah under this provision, the district court did not set aside the judgment under K.S.A. 60-260(b)(6), specifically noting that its decision was based upon construction of the journal entry of divorce and other instruments and not upon setting aside the judgment. Therefore, we decline to address the issue. We also decline to address whether the district court erred in awarding prejudgment interest.

The Court of Appeals' decision reversing the district court is reversed. The judgment of the district court is also reversed and the case is remanded for further proceedings.

LARSON, S.J., assigned.