No. 127,090

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

MADELINE KENKEL,
*Appellee*,

and

JOHN KENKEL,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 23-2801(a), marital property is all property owned by the married parties or acquired by either spouse after marriage.

2.

A district court is vested with broad discretion to adjust the property rights of parties involved in a divorce action. The division of property need not be equal to be just and reasonable.

3.

The assets of the marriage are determined on the valuation date and that date controls the division of the assets of the marriage, including any interest or dividends accrued until transferred to the respective party.

Appeal from Wyandotte District Court; BILL L. KLAPPER, judge. Oral argument held August 6, 2025. Opinion filed September 12, 2025. Affirmed in part, reversed in part, and remanded with directions.

*Joseph W. Booth*, of Lenexa, for appellant.

*Colby L. Rieke*, of McDowell Rice Smith & Buchanan, P.C., of Kansas City, Missouri, for appellee.

Before ISHERWOOD, P.J., SCHROEDER and PICKERING, JJ.

SCHROEDER, J.:  All assets owned by a husband and wife at the time of filing for divorce become assets subject to division by the district court in an equitable manner, not necessarily equal. John Kenkel now timely appeals the division of assets made by the district court after his wife, Madeline Kenkel, filed for divorce, claiming the division was arbitrary. Upon an extensive review of the record, we find the district court did not err in the division of the assets, except for the way it accounted for a gift John made to his sister. We affirm in part, reverse in part, and remand to the district court to correct that accounting error.

## FACTUAL AND PROCEDURAL BACKGROUND

Madeline and John were married on September 5, 2015. The parties' relationship struggled, and, in September 2020, Madeline petitioned for divorce due to incompatibility. There are no children of the marriage. The district court granted the parties a divorce and set the property-related issues for a later date.

Prior to the property division trial, the parties stipulated to a valuation date of February 29, 2020, for their assets and debts. Both parties requested the district court to make the asset division between them through the assignment of stock shares. John had been employed by Garmin before the parties' marriage and had received stock shares as compensation, which shares were in various brokerage accounts and in a 401(k) retirement account. Each party testified, as well as two expert witnesses—one on behalf of John and one on behalf of Madeline.

Madeline's expert witness, George Matthew Barberich Jr., explained the purpose of his expert opinion "was to calculate the marital appreciation of [the Garmin] shares, the tax effect of those shares, and to opine as to the deficiencies, errors, and omissions in [John's expert's] reported opinions." Barberich relied on the date of marriage and the stipulated valuation date to determine the marital value of the Garmin stock. Barberich determined the marital appreciation of the Garmin shares by looking at the quantity of shares owned at the beginning of the marriage and calculating the change in value of those shares held as of the valuation date. Barberich also calculated the value of Garmin shares acquired during the marriage. He calculated the total marital Garmin shares as 11,806.6901 and suggested Madeline receive 50 percent, or 5,550 shares. Barberich confirmed the transfer of shares would prevent tax implications associated with liquidating the asset and "the cost basis allocation of shares can be handled by the parties so that each side is in the position it would have been from a tax perspective." Barberich testified that John's expert witness' methodology was "arbitrary [and] fundamentally flawed and would inappropriately result in different marital appreciations for hypothetical similarly situated Garmin employees."

Steven L. York, John's expert witness, testified that Barberich's report provided no cost basis to John of the Garmin shares as the price of the shares was substantially lower at the time of marriage than when John purchased or received the shares. York also stated the shares obtained during the marriage should be prorated based on when they were received. York found it more equitable to use a compound annual growth rate of 6.06 percent from 2003, when John was employed by Garmin, through September 2022—well past the agreed upon valuation date of February 29, 2020. York claimed the 401(k) Garmin shares should have been dealt with differently than the other Garmin shares as taxes were deferred on the 401(k) shares as a qualified retirement plan asset and because the 401(k) money could not be used until retirement without a tax penalty. However, York did not treat the 401(k) shares differently in his original report. York admitted he

3

could not think of any professional literature that supported the calculations and methodology used in his report.

The hearing was continued so Madeline's expert witness could provide additional rebuttal testimony. Barberich addressed potential tax implications related to the Garmin shares placed in John's 401(k) that had not yet been taxed. Barberich noted the different tax implications that would come into effect if the assets were liquidated into cash. Barberich explained:

> "If the total appreciation of the Garmin stock during the marriage is settled in kind with shares, [Madeline] would receive a certain number of shares with a certain value to it. She should have only half of the cost basis that was acquired during the marriage attributed to her, and then [John] would retain all of his premarital cost basis, and he would receive half of the cost basis that was acquired during the marriage.
>
> "Because . . . if you divide it that way, and then the shares were sold, [Madeline] would appropriately pay a higher tax amount on the marital appreciation, because the marriage didn't contribute any money to that asset. It just increased in value and so that's appropriate.
>
> "And then [John] would retain his higher cost basis . . . that in prior years the stock price was much higher than it was at the marriage date or the valuation date. [John] would retain that tax benefit by having the higher cost basis.
>
> "So, each party is economically put into the position, the equitable position that they should be in dividing that asset."

In June 2023, the district court issued its decision, finding the most significant issue between Madeline and John was John's Garmin stock. The district court explained John's expert witness used a unique valuation method that "was not strictly in conformity with generally accepted valuation methods" and chose to adopt the findings of Madeline's

4

expert witness "as being more accepted and conventional in its application to the facts in this matter." The district court found John had a net worth of $1.6 million at the time of marriage, while Madeline had more debt than assets.

The district court applied the 10 statutory factors under K.S.A. 23-2802(c) to make a just, reasonable, and equitable division of property. The primary factors the district court considered were the short length of the marriage; property owned by the parties; and the time, manner, and source of acquisition of the property—primarily John's Garmin stock. The district court found the difference in the value of assets without consideration of the Garmin stock was $350,869 in favor of John, and Madeline was entitled to an equalization payment of 50 percent, or $175,434, paid at John's discretion by cash or transfer of stock. The district court also found:

- Madeline's $38,000 student loan payment was offset by John's $15,000 gift to his sister and the 2019 tax liability of $16,000 to be paid by John;
- each party was to keep his or her respective vehicle;
- John was to keep the ARKK and Tesla stock purchased with no input from Madeline shortly before the valuation date, unless marital funds were used to purchase the stocks, then Madeline would be entitled to half of the cost of the stocks;
- it was not equitable for Madeline to take 50 percent of the Garmin stock as requested but awarded her 4,000 shares of Garmin stock; and
- each party was to pay his or her own attorney fees.

John timely filed a motion to amend or make additional findings under K.S.A. 60-252(b) and alter or amend the judgment under K.S.A. 60-259(f). John acknowledged the district court found Madeline's expert witness' methodology more reliable than John's expert witness. But John claimed, among many other things, it was unclear how the district court came to its mathematical conclusions, specifically related to the equalization

5

payment and quantity of Garmin stock. John was concerned the district court did not account for his premarital Garmin shares or for shares withheld for taxes on unvested marital shares.

Madeline also filed a motion to reconsider, alter or amend judgment pursuant to K.S.A. 60-259 and K.S.A. 60-252. Madeline pointed out the district court stated the incorrect date on which the petition for divorce was filed. More importantly, Madeline sought clarity on the equalization payment due her to be paid at John's discretion by cash or transfer of stock, claiming John could select his worst performing stock in his brokerage account portfolio. Rather, Madeline wanted a proportionate share of each of John's six different brokerage and retirement accounts. Madeline also asked the district court to amend its judgment and issue an order stating John's Tesla and ARKK stocks were purchased with marital funds and should be divided equally. Madeline asserted the district court failed to assign to either party the cash value of John's non-Garmin cash-only E*TRADE account ending in 9047 and requested the district court award her the full amount—$50,615.

In August 2023, the district court issued another decision and acknowledged the correct filing date of the petition for divorce. The district court explained the equalization payment of $175,434 was the difference between the assets each party had in their names. The district court clarified John could transfer stock or cash, though both parties requested stock, and the district court authorized transfer of stock by a qualified domestic relations order (QDRO) with the cost equally divided between the parties. The district court again stated John could choose which stocks to transfer and Madeline was free to sell the low performing stocks. Madeline was to bear the cost of tax implications if she chose to sell the stocks.

The district court explained the award of 4,000 shares of Garmin stock to Madeline reflected the increase in value of the stock during the marriage and the court's

6

equitable division of the stock. The district court determined the ARKK and Tesla stock were purchased with nonmarital funds and were, therefore, awarded to John free and clear of any interest to Madeline. As for the E*TRADE account ending in 9047 that Madeline disputed in her motion to alter or amend judgment, the district court found the value, minus Garmin stock options, to be $37,566, and Madeline was awarded 50 percent. The district court explained it "consider[ed] the parties['] premarital holdings and the increase in value of the assets during the marriage to determine what is equitable in the division of the parties' assets not as a credit to one party or a liability to the other party."

John timely filed another motion to amend or make additional findings under K.S.A. 60-252(b) and alter or amend the judgment under K.S.A. 60-259(f). John claimed that "the combined value of the estate in the Amended Decision ruling ($3M) is greater than the combined estate of the parties ($2.29M) on [the valuation date]." John also claimed (1) the equalization payment was incorrect; (2) the district court accounted for all unvested Garmin shares, which failed to consider the portion of shares withheld; and (3) the district court incorrectly calculated the value of the E*TRADE account ending in 9047. Finally, John stated his 401(k) retirement plan does not allow for the transfer of stock shares.

Madeline responded to John's motion, denying pertinent allegations. Madeline essentially submitted that John failed to use the assets and debt values adopted by the district court and tried to substitute the numbers he presented at trial. Madeline also asked the district court to award her attorney fees.

In October 2023, the district court denied John's second motion for reconsideration under K.S.A. 60-252(b) and K.S.A. 60-259(f), as well as Madeline's request for attorney fees. Additional facts will be discussed as necessary.

7

*Standard of Review*

A district court's division of property in a divorce proceeding is governed by K.S.A. 23-2801 et seq. A district court is vested with broad discretion to adjust the property rights of parties involved in a divorce action. We review the district court's division of marital debts and assets for abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). A district court abuses its discretion if its decision is based on an error of fact or law or is arbitrary, fanciful, or unreasonable. John bears the burden to establish such abuse of discretion. See *In re Parentage of R.R.*, 317 Kan. 691, 701-02, 538 P.3d 838 (2023).

Under K.S.A. 23-2801(a), marital property is all property owned by the married parties or acquired by either spouse after marriage. A district court shall consider 10 factors in dividing the marital property:

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 23-2802(c).

The division of property need not be equal to be just and reasonable. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010).

*Discussion*

John argues the district court abused its discretion and failed to provide adequate findings of fact and conclusions of law in its division of marital assets. John contends the district court (1) failed to adequately explain its methodology in granting Madeline 4,000 shares of Garmin stock; (2) failed to address the cost basis of shares held outside tax-deferred accounts; (3) failed to clarify the tax implications of various transfer methods; (4) erred in allocating Madeline's premarital student loan debt, John's gift to his sister, other taxes, and the Tesla and ARKK stocks; and (5) failed to provide enough detail in its findings of fact and conclusions of law to allow for meaningful appellate review, despite multiple requests to alter or amend the judgment. John suggests each issue is interrelated and inseparable.

*Garmin stock*

John asserts the allocation of Garmin stock is the most concerning issue on appeal, specifically, "how to treat the non-marital value for [Garmin] shares earned both before the date of marriage and after the date of valuation that John felt he was due," and "how to account for the cost basis of those shares held outside of a tax deferred [401(k)] account." John seems to claim the district court's amended award to Madeline of 4,000 Garmin shares was arbitrary and failed to account for the value of the Garmin shares and tax consequences. John asks us to remand to the district court for further findings of fact explaining how it equitably divided the party's assets.

John's Garmin stock totaled approximately 16,000 shares accumulated before and during the marriage and was held in four accounts—two E*TRADE accounts, a 401(k), and a UBS account. The district court first explained it was not adopting York's valuation but also believed Barberich's assessment of 50 percent of the approximately 11,000 marital Garmin shares was not an equitable distribution of the assets. The district court

9

later clarified the 4,000 Garmin shares awarded to Madeline reflected "the increase in value of that stock during the marriage and the [court's] equitable division of the stock."

The district court accepted Madeline's expert's methodology reflecting approximately 11,000 shares were marital shares and accounted for the appreciation of premarital shares during the marriage. The district court heard testimony about Garmin stocks that were awarded for future work, Garmin stocks awarded for previous years' work, and Garmin shares withheld for tax purposes. It is reasonable that the district court would not award Madeline 50 percent of the marital shares to account for such circumstances. Rather, the district court awarded Madeline just over one-third of the marital Garmin shares—an equitable division under the circumstances. Further, any valuation and taxation issues are resolved by the fact the shares would be transferred rather than liquidated. By transferring stock, each party maintains a cost basis in the Garmin shares relative to when and how they were accumulated and would be taxed accordingly if the shares are sold. The district court took the matter under advisement and considered the parties' proposed findings of fact and conclusions of law as well as expert testimony. We find the court's division of stock is equitable and a reasonable reflection of how it applied K.S.A. 23-2802(c).

John also claims the district court's order was vague and "leaves two reasonable interpretations relating to the Garmin stock, either it is a transfer of shares outside the 401(k) or allows John to transfer shares from the 401(k) by QDRO." John asserts the enforceability of the transfer of Garmin shares from his pretax 401(k) is an issue as "the plan administrator requires a lump sum in dollars or a percentage (together with the increases or decreases in value) but will not distribute shares."

A QDRO provides "'an exception not only to [the Employee Retirement Income Security Act] ERISA's rule against assignment of plan benefits but also to ERISA's broad preemption of state law.'" *In re Marriage of Larimore*, 52 Kan. App. 2d 31, 37, 362 P.3d

843 (2015). In fact, "[a] QDRO is a [domestic relations order] which 'creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan.'" 52 Kan. App. 2d at 37.

From the records provided to us, John has over 4,000 shares of Garmin stock in non-401(k) accounts, as well as over 4,000 shares in his retirement account managed by T. Rowe Price. The district court never required John to transfer Garmin stock from his 401(k). It ordered the transfer of 4,000 shares of Garmin stock and gave John the option on how to make it happen—either through a QDRO with his retirement accounts or from his other stock accounts. We find the district court followed a proper analysis of John and Madeline's assets and did not abuse its discretion by awarding 4,000 Garmin shares to Madeline as of the valuation date.

Madeline asserts "she should receive her proportionate share of any Garmin stock dividends paid since the date of valuation." John responds, arguing Madeline failed to cross-appeal this issue and cannot obtain her requested relief. Contrary to John's argument, Madeline has not raised an issue requiring her to cross-appeal; rather, she correctly states the applicable law regarding the distribution of assets to which she is entitled under the district court's order.

K.S.A. 23-2802(b) states in relevant part: "In dividing defined-contribution types of retirement and pension plans, the court shall allocate profits and losses on the nonparticipant's portion until date of distribution to that nonparticipant." Here, the parties set the valuation date as February 29, 2020. Now, over five years later, the assets have continued to appreciate in value. Had Madeline timely received the 4,000 Garmin shares, as well as the shares she was entitled to from the equalization payment, she would have benefited from the appreciated value of the stocks, if any. The assets of the marriage were determined on the valuation date and that date controls the division of the assets of the

11

marriage, including any interest or dividends accrued until transferred to the respective party.

*Equalization payment*

The district court accepted John's proposed premarital net worth of $1.6 million over the $852,872 Madeline proposed. John seems to want credit for the assets he brought into the marriage. The parties' disagreement over John's premarital net worth is without consequence as all premarital assets became marital property upon the filing of the divorce subject to an equitable division. See K.S.A. 23-2801(a).

John's objection to the equalization payment is unclear. John notes the equalization payment owed to Madeline "is known, $175,434 (but in question)." It appears John is wanting us to remand to the district court with clearer instructions on how to distribute the stocks in satisfaction of the equalization payment and with instruction on the value in time of the stocks to be transferred, but not to reevaluate the amount of the equalization payment. His concern is poorly briefed and hard to follow. Any argument disputing the amount of the equalization payment is waived and abandoned. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (issues not adequately briefed or point raised incidentally in brief and not argued deemed waived or abandoned).

With respect to satisfying the equalization payment, the district court already explained:

> "[John] may transfer stock or cash. Both parties request stock transfer by QDRO. The Court has previously authorized this method of division. [John] may choose which stocks. [John] was the investor in the relationship and principally responsible for the increase in the stock value. [Madeline] is free to sell the 'low performing stock' if she chooses to do so. The sale may carry tax implications, [Madeline] is to bear the cost if she chooses to sell."

The district court could not have made its instruction any clearer. John gets to decide how he wants to fund the $175,434 payment effective from the date of the marital estate's valuation date. He can transfer stock with no tax consequences, or he can pay cash and fund it in whatever manner he determines. To be clear the $175,434 is a judgment; if John funds it through a cash payment, then postjudgment interest would attach to the payment.

*Offsetting debts*

John argues the district court incorrectly offset Madeline's premarital student loan debt with a gift John made to his sister and with a 2019 marital tax liability payment John paid after the valuation date. In accounting for the parties' assets, the district court offset Madeline's premarital student loan debt of about $38,000 with a $15,000 gift John made to his sister and a 2019 tax liability of about $16,000 that accrued during the marriage and was paid by John. At oral argument both parties agreed the 2019 tax payment was $16,000. However, the $15,000 gift John made to his sister was in the form of a check dated February 16, 2020—about two weeks before the asset valuation date—and the check posted on March 2, 2020, after the valuation date. The funds, therefore, were not yet withdrawn from the account by the valuation date. Because the district court relied on the beginning account balance in the Shelby County State Bank account from a February 15, 2020 bank statement date—before the $15,000 check was posted on March 2, 2020— Madeline should not have received credit for the $15,000 gift as those funds were still in the joint bank account and used by the district court to determine the equalization payment. As for the student loans, Madeline agreed that her premarital student loan debt was paid off during the marriage and the debt was properly assigned to her.

The findings of fact and conclusions of law by the district court are more than sufficient for our review. We affirm the allocation of Garmin shares, the equalization payment effective as of the valuation date, and the split of the E*TRADE account ending

in 9047. We remand the case to the district court to adjust the equalization payment with the debt calculation for Madeline's student loans and the tax payment to reflect the $15,000 gift John made to his sister posted to his checking account after the valuation date and cannot be counted twice.

Affirmed in part, reversed in part, and remanded with directions.