NOT DESIGNATED FOR PUBLICATION

No. 116,037

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
CYNTHIA GAY SHAW,
*Appellee*,

and

TERRENCE LEE SHAW JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; ERICA K. SCHOENIG, judge. Opinion filed December 22, 2017. Affirmed.

*Christopher C. Barnds*, of Copley Roth & Davies, LLC, of Overland Park, for appellant.

*Amberlynn M. Isaacs*, of Short, Borth & Thilges, Attorneys at Law, L.L.C., of Overland Park, for appellee.

Before HILL, P.J., MALONE, J., and MERLIN G. WHEELER, District Judge, assigned.

PER CURIAM: Cynthia Shaw and Terrence Lee Shaw Jr. were married on September 26, 1998, and two children (twins) were born to the marriage in 2004. Cynthia filed for divorce on July 21, 2014. To their credit, the parties resolved all parenting and child custody issues. However, all remaining issues, including maintenance, child support, and division of the parties' substantial assets and debts proceeded to trial. One of the issues at trial was the value of the small business Terrence started in 2006 known as WireVibe, LLC (WireVibe). Cynthia and Terrence were the only witnesses at trial and each party introduced numerous exhibits. Neither party called an expert witness to testify

1

as to the value of WireVibe. After hearing the evidence and taking the matter under advisement to review the exhibits, the district court reconvened and made extensive findings from the bench. The district court awarded maintenance in favor of Cynthia and set the amount of child support. The district court also valued and divided the parties' substantial assets and debts, including real estate, bank accounts, motor vehicles, retirement plans and annuities, and other assets, which included a valuation of WireVibe.

Terrence appeals and contests only two rulings made by the district court concerning the division of marital property. First, Terrence claims that the district court abused its discretion in valuing WireVibe. Second, Terrence claims that the district court abused its discretion in dividing the 2014 joint income tax refund equally between the parties. As a result of these two errors, Terrence claims that the district court abused its discretion in its overall division of the parties' marital estate. But after reviewing the record, we find that the district court's factual findings are supported by substantial competent evidence and that the district court did not abuse its discretion in the division of marital property. Accordingly, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We will briefly summarize the facts as they relate to the limited issues being challenged on appeal. Cynthia and Terrence were married on September 26, 1998. In 2006, Terrence started WireVibe, which is an IT company that provides logistical support for larger companies. After Terrence started WireVibe, Cynthia did not work outside the home and the parties filed joint business and personal income tax returns. Since 2010, the couple usually received significant income tax refunds because of financial losses sustained by WireVibe. Then, on July 21, 2014, Cynthia filed for divorce.

On September 14, 2015, the district court held a bench trial to determine the division of marital property. At a pretrial hearing, the district court set the valuation date

2

as July 31, 2014. Significantly, at the beginning of the trial, both parties stipulated to the admission of all exhibits. Cynthia and Terrence were the only witnesses at trial. Although one of the contested issues was the valuation of WireVibe, neither party called an expert witness to testify as to the company's value. But the parties seemed to agree, based on their interpretation of the Johnson County Bench Bar Guidelines, that the business would be valued by considering the value of the personal property of the business, including the cash on hand, along with the value of the accounts receivable and the accounts payable.

At trial, Cynthia testified that WireVibe had a total value of $109,181. To reach that figure, Cynthia testified that WireVibe's personal property was valued at $177,320 based on the 2013 tax return. She then testified that WireVibe's accounts receivable totaled $129,039 and that the accounts payable, after appropriate adjustments, totaled $273,951, both as of October 2014. Cynthia testified that she used the October 2014 figures because Terrence only provided her with WireVibe's accounts receivable and accounts payable information as of October 6, 2014. Finally, Cynthia testified that WireVibe's checking account contained about $76,772 as of September 2014.

Terrence testified that WireVibe should be valued at a negative $185,187.04. To reach that figure, Terrence testified that WireVibe's personal property was valued at $15,300. He then offered exhibits which showed that WireVibe's accounts receivable totaled $112,739.83 and the accounts payable totaled $388,420.57, both as of August 2014. He also testified that WireVibe had $20,000 in "bad debt," which should be subtracted from the accounts receivable. Finally, Terrence testified that WireVibe's checking account contained $95,340.20 as of July 2014.

Also at trial, the parties argued over who should receive the 2014 joint income tax refund, although the amount of the refund had not yet been determined. Cynthia asked for the refund to be divided equally between the parties, while Terrence asked for the entire refund to help cover WireVibe's financial losses.

3

On October 14, 2015, the district court issued its ruling from the bench and made extensive findings as to maintenance, child support, and division of the marital property. As to WireVibe's valuation, the district court adopted Cynthia's proposed value and awarded the business exclusively to Terrence. The district court found that Terrence had "presented no persuasive evidence" to support his claim that the business should have a negative valuation. Specifically, the district court stated as follows:

"The Court did adopt the value proposed by wife on her Petitioner's Exhibit 1 for the value of Wirevibe LLC. That's husband's company. That's valued at $109,181. Husband presented no persuasive evidence in this Court's mind that Wirevibe has no value whatsoever other than I think he wanted me to adopt 15,000 for some property in the actual office. This Court finds the value proposed by petitioner is the right value, and that's a fair value. Husband shall be assigned the Wirevibe LLC at the value of $109,181."

As to the income tax refund, the district court noted that the 2013 tax refund had been used to pay down company liabilities and that "both parties benefited from that money being utilized in that manner." But as to the 2014 income tax refund, the district court found that it should be divided equally between the parties because the "parties were separated for almost half of 2014. There's no reason that husband should retain that entire refund moving forward." On December 1, 2015, the district court filed a written journal entry and decree of divorce.

On December 29, 2015, Terrence filed a motion to alter or amend the district court's judgment pursuant to K.S.A. 2015 Supp. 60-259. In that motion, Terrence argued that the district court erred in its valuation of WireVibe and in equally dividing the 2014 tax refund. On April 12, 2016, the district court held a hearing on this motion and took the matter under advisement. The district court denied the motion to alter or amend the judgment in an order filed on May 5, 2016. Terrence timely filed a notice of appeal.

4

On appeal, Terrence contests two rulings made by the district court concerning the division of marital property. First, Terrence claims the district court abused its discretion in valuing WireVibe. Second, Terrence claims the district court abused its discretion in dividing the 2014 tax refund equally between the parties. As a result of these two errors, Terrence claims that the district court abused its discretion in its overall division of the parties' marital estate. Conversely, Cynthia argues that the district court did not abuse its discretion in its division of the marital estate. Instead, Cynthia contends that the district court's decision was based on substantial competent evidence that was presented at trial.

The parties agree that in property division cases, appellate review is for abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error law; or (3) the action is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

When a district court's factual findings are contested on appeal, appellate courts must determine whether the findings are supported by substantial competent evidence. *In re Marriage of Wherrell*, 274 Kan. at 987. "Substantial competent evidence is evidence possessing both relevance and substance that a reasonable person could accept as being adequate to support a conclusion." *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709, 216 P.3d 170 (2009). On appeal, this court does not determine the credibility of witnesses or reweigh the evidence. *In re Estate of Farr*, 274 Kan. 51, 68, 49 P.3d 415 (2002). Finally, the complaining party bears the burden of showing that the district court's findings are not supported by substantial competent evidence. See *In re Marriage of Larson*, 257 Kan. 456, 463-64, 894 P.2d 809 (1995).

A district court's division of property in a divorce action is governed by K.S.A. 2016 Supp. 23-2801 et seq. K.S.A. 2016 Supp. 23-2802(c) provides district courts with factors to consider in making a division of property:

> "In making the division of property the court shall consider: (1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property."

Based on these factors, a district court's division of martial property must be equitable. *In re Marriage of Rodriguez*, 266 Kan. 347, 352-53, 969 P.2d 880 (1998). However, an equitable division of property does not necessarily mean equal. 266 Kan. at 352-53.

Terrence's appellate argument does not focus on any of the factors relating to the division of property set forth in K.S.A. 2016 Supp. 23-2802(c). Rather, Terrence makes three separate claims concerning the district court's division of the marital property. First, Terrence claims that the district court abused its discretion by valuing WireVibe at $109,181. In particular, he argues that the district court erroneously made the following findings of fact leading to that value: (1) finding WireVibe's personal property was worth $177,320; (2) finding WireVibe's accounts receivable totaled $129,039; (3) finding WireVibe's accounts payable totaled $273,951; and (4) finding WireVibe's checking account totaled $76,772. Second, Terrence claims that the district court abused its discretion when it equally divided the 2014 joint income tax refund. Finally, he claims that as a result of these two errors, the district court abused its discretion in its overall division of the parties' marital estate. We will examine each of these claims in turn.

6

Terrence claims that the district court abused its discretion in valuing WireVibe at $109,181 and that the district court's findings with respect to the valuation were not supported by substantial competent evidence. Terrence breaks down his argument into four separate subissues, and he argues that the district court erroneously made findings as to the value of WireVibe's personal property, accounts receivable, accounts payable, and cash on hand. Terrence also argues that the district court failed to make adequate findings to support its overall conclusion as to the valuation of WireVibe.

We agree with Terrence that the district court made only general findings and adopted Cynthia's proposed valuation of WireVibe based on the evidence she presented at trial. Supreme Court Rule 165 (2017 Kan. S. Ct. R. 214) imposes on the district court, through K.S.A. 2016 Supp. 60-252(a), the primary duty to provide adequate findings of fact and conclusions of law on the record to explain the court's decision on contested matters. However, a party must object to inadequate findings and conclusions to give the district court an opportunity to correct any alleged inadequacies. See *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 903 (2016). Also, K.S.A. 2016 Supp. 60-252(b) permits a party to file a written motion requesting additional findings as long as the motion is filed no later than 28 days after the entry of judgment. When no objection is made to a district court's inadequate findings of fact or conclusions of law, an appellate court can presume the district court found all facts necessary to support its judgment. *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

Here, after the district court issued its ruling from the bench on October 14, 2015, Terrence's counsel asked for a "clarification" as to why the district court adopted Cynthia's business valuation figures over Terrence's figures. We do not interpret this request for a clarification as an objection to the adequacy of the district court's findings. We also do not read Terrence's motion for a new trial or to alter or amend the district

court's judgment pursuant to K.S.A. 2016 Supp. 60-259 as asking for additional factual findings. Because Terrence failed to object in district court to the adequacy of the district court's findings, we presume in this instance that the district court found all facts necessary to support its judgment. See *O'Brien*, 294 Kan. at 361.

*Subissue 1: Valuation of WireVibe's Personal Property*

The valuation of WireVibe's existing personal property—or hard business assets—was a contested issue at trial. Cynthia testified that WireVibe's personal property had a value of $177,320 based on WireVibe's 2013 income tax return, which was marked and admitted into evidence without objection as Petitioner's Exhibit 20. More specifically, the figure came from WireVibe's 2013 Schedule C-1 Depreciation and Amortization Report. The figure is found under the "Reduction In Basis" column on the last page of the report. At trial, Cynthia testified that she selected that figure as the proper valuation of WireVibe's personal property based on the advice of her attorney.

In contrast, Terrence testified at trial that WireVibe's personal property should be valued at $15,300. To support this contention, he provided a Notice of Appraised Value that he had received from the Dallas Central Appraisal District. Terrence, who is neither a business evaluator nor an accountant, testified that Cynthia was not properly reading the 2013 Schedule C-1 Report in arriving at the correct value of the personal property.

The district court adopted Cynthia's overall proposed valuation of WireVibe as opposed to Terrence's negative valuation of the company. The district court found that Terrence "presented no persuasive evidence . . . that WireVibe has no value" and that the valuation proposed by Cynthia was "a fair value." The district court did not focus on the valuation of each component of the business and did not make a specific finding as to the value of the personal property, but we presume that the district court adopted Cynthia's evidence and calculations in arriving at the overall valuation of the business.

8

On appeal, Terrence argues that the district court's finding as to the valuation of the personal property was not supported by substantial competent evidence and that it was a "mistake of fact" for the district court to adopt Cynthia's figure. Specifically, Terrence argues that "no reasonable person, after hearing the evidence presented at trial, would read the 2013 Schedule C-1 Report submitted herein and use the figure that aptly falls under the column 'Reduction in Basis' as the number for the present-day value of WireVibe's personal property." He further argues that the district court's adoption of Cynthia's figure was "clearly a mistake of fact, as it is simply not how one reads an amortization report." Terrence goes so far as to suggest that the district court "could have conducted limited cursory research to discover for itself that Mr. Shaw's testimony as to reading the 2013 Schedule C-1 Report was correct."

However, Cynthia argues in her brief that her valuation of WireVibe's personal property was supported by substantial competent evidence presented at the trial, namely the 2013 Schedule C-1 Report admitted as a trial exhibit without any objection by Terrence. Cynthia points out that Terrence could have provided an expert witness to testify regarding the business valuation and the significance of the figures on the tax return, but he failed to call such an expert witness at trial even though the district court had granted him extra time to do so at a pretrial conference on June 9, 2015. Cynthia scoffs at the notion that the district court should have researched the issue itself and points out that the district court is not allowed to look beyond the evidence that each party presents at trial in order to resolve questions of fact. Finally, Cynthia argues that Terrence is merely asking this court to reweigh the evidence that was presented to the district court as to the valuation of WireVibe's personal property.

We side with Cynthia on this issue. Cynthia's valuation of WireVibe's personal property was based on evidence presented at the trial, i.e., the 2013 Schedule C-1 Report which was admitted into evidence without objection. We are not offended by the fact that Cynthia relied on the advice of her attorney as to how to interpret the report. Was the

9

"Reduction In Basis" figure in the report the best evidence of the value of the personal property? We do not know the answer to that question. However, we also do not know whether the evidence presented by Terrence as to the value of the personal property was any more probative than the evidence presented by Cynthia.

Neither party chose to call an expert witness to testify as to the proper valuation of WireVibe. On appeal, Terrence is essentially asking this court to take judicial notice that Cynthia's reading of the 2013 Schedule C-1 Report was "clearly a mistake of fact." However, we are unable to take judicial notice of such a fact. See K.S.A. 60-409. We certainly reject Terrence's suggestion that the district court should have "conducted limited cursory research" to discover for itself that Cynthia's reading of the 2013 Schedule C-1 Report was incorrect. The parties presented highly conflicting evidence as to the valuation of WireVibe's personal property and, on appeal, Terrence is simply asking this court to reweigh the evidence. But as we previously stated, an appellate court does not reweigh conflicting evidence or pass on the credibility of witnesses. We conclude that the district court's valuation of WireVibe's personal property was supported by substantial competent evidence and that the district court did not abuse its discretion in adopting Cynthia's evidence as to the value of the personal property.

*Subissue 2: Valuation of Accounts Receivable*

Terrence claims the district court abused its discretion in valuing WireVibe's accounts receivable at $129,039. More specifically, Terrence argues that the district court erred by using WireVibe's accounts receivable as of October 6, 2014, as presented by Cynthia, when the district court set a valuation date of July 31, 2014. Conversely, Cynthia argues that the accounts receivable valuation was based on substantial competent evidence and that the district court did not abuse its discretion in adopting her evidence.

10

As we previously stated, the district court essentially adopted Cynthia's proposed valuation of WireVibe, including her valuation of each component of the business. Terrence filed no written objection to the adequacy of the district court's findings. The valuation of the accounts receivable at $129,039 was supported by substantial competent evidence presented at the trial; the figure comes directly from Petitioner's Exhibit 21— WireVibe's A/R Aging Summary as of October 6, 2014, which was admitted into evidence without objection. Terrence's primary complaint is that Cynthia used WireVibe's accounts receivable as of October 6, 2014, when the district court set a valuation date of July 31, 2014. However, as Cynthia explained in district court, she presented the October 6, 2014 statement because that was the only accounts receivable documentation that had been provided by Terrence until immediately before the trial.

K.S.A. 2016 Supp. 23-2802(b) states as follows:

"Upon request, the trial court shall set a valuation date to be used for all assets at trial, which may be the date of separation, filing or trial as the facts and circumstances of the case may dictate. *The trial court may consider evidence regarding changes in value of various assets before and after the valuation date in making the division of property.* In dividing defined-contribution types of retirement and pension plans, the court shall allocate profits and losses on the nonparticipant's portion until date of distribution to that nonparticipant." (Emphasis added.)

Under the statute, the district court may consider evidence regarding changes in value of various assets before and after the valuation date in making the division of property. Thus, although the district court set a valuation date of July 31, 2014, it was permitted to consider WireVibe's accounts receivable as of October 6, 2014. See, e.g., *In re Marriage of Waugh and Tugman*, No. 100,937, 2009 WL 3270845, at *5-6 (Kan. App. 2009) (unpublished opinion) (under K.S.A. 60-1610[b][1] [now K.S.A. 2016 Supp. 23-2802(a)-(b)], finding no abuse of discretion when a district court determined the value of a house based on valuations nearly two years after the original valuation date); *In re*

11

*Marriage of Singhal*, No. 100,068, 2009 WL 1692246, at *5 (Kan. App. 2009) (unpublished opinion) ("The statute makes clear that, even after the district court here designated a common valuation date for all assets, the court was permitted to consider subsequent changes in the value of the marital home in deciding how to divide the property.").

Terrence complains that the district court did not consider WireVibe's bad debt in valuing the accounts receivable. Although Terrence testified that WireVibe had $20,000 in "bad debt," he offered little testimony on this point and failed to explain how he arrived at that figure in any sufficient detail. Based on the record, we conclude that the district court's valuation of the accounts receivable was supported by substantial competent evidence and that the district court did not abuse its discretion in adopting Cynthia's evidence as to the value of the accounts receivable.

*Subissue 3: Valuation of Accounts Payable*

Terrence also claims that the district court abused its discretion in valuing WireVibe's accounts payable at $273,951. Cynthia testified that WireVibe's accounts payable totaled $329,258 as of October 6, 2014, and presented Petitioner's Exhibit 23 as evidence of this value. She also testified that a specific account payable, namely a $55,307 debt to the IRS for payroll taxes, was expected to be resolved in WireVibe's favor, thereby reducing the accounts payable to $273,951. As we have previously explained, the district court did not abuse its discretion by considering Cynthia's accounts payable statement dated October 6, 2014, which was admitted into evidence without objection, even though the district court had set the valuation date at July 31, 2014. We conclude that the district court's valuation of WireVibe's accounts payable was supported by substantial competent evidence and that the district court did not abuse its discretion by adopting Cynthia's evidence as to the value of the accounts payable.

12

*Subissue 4: Valuation of Cash on Hand*

At trial, Cynthia testified that WireVibe had $76,772 in its CitiBank checking account on September 1, 2014. Cynthia also submitted a CitiBank account statement showing that WireVibe's beginning balance in September 2014 was $76,772.21. Conversely, Terrence submitted a CitiBank checking account statement indicating that WireVibe's account had $95,340.20 as of July 31, 2014. Terrence argues, and we agree, that his figure for the cash on hand may have been better because it was based on the exact valuation date set by the district court. However, any error by the district court in adopting Cynthia's lower figure as to cash on hand worked in Terrence's favor as he was trying to convince the district court that the overall valuation of WireVibe was less than Cynthia's overall valuation of the business.

To begin to sum up, each party presented substantially different figures as to WireVibe's valuation and it was within the district court's province to resolve the conflicting evidence. Both parties seemed to agree, based on their interpretation of the Johnson County Bench Bar Guidelines, that the business would be valued by using a rigid formula: the value of the personal property plus cash on hand plus accounts receivable minus accounts payable equals the value of the business. We question the use of such a rigid formula because, as shown by the evidence in this case, the individual components of the formula can fluctuate significantly from month to month.

Neither party bothered to retain an expert witness to assist the district court in valuing WireVibe as a business entity. Each party presented testimony and numerous exhibits to the district court to support their valuation of the business, and all the evidence was admitted by stipulation. Now Terrence complains on appeal because the district court ultimately chose to adopt Cynthia's evidence as to the value of the business. The district court focused on the overall valuation of the business. Although Terrence insisted that WireVibe be assigned to him in the property division, he wanted the district court to

13

adopt his evidence that the business should be valued at a negative $185,187.04. The district court was not impressed with Terrence's assertion that WireVibe somehow had a negative value, and the court stated as much when it found that Terrence "presented no persuasive evidence . . . that WireVibe has no value whatsoever." Instead, the district court found that Cynthia's proposed value of WireVibe at $109,181 was "a fair value."

Ultimately, Terrence is asking this court to do what we will not do on appeal, i.e., reweigh the evidence and determine the credibility of witnesses. We conclude that the district court's factual findings regarding the valuation of WireVibe were supported by substantial competent evidence. We also reject Terrence's claim that no reasonable person would have taken the view adopted by the district court in valuing the business. Thus, we conclude the district court did not abuse its discretion in its valuation of WireVibe.

2014 INCOME TAX REFUND

Terrence claims that the district court abused its discretion in dividing the 2014 joint income tax refund equally between the parties. At the time of the trial, the amount of the tax refund had not yet been determined. However, based on subsequent proceedings that are included in the record on appeal, it appears that the 2014 tax refund amounted to $30,015. At trial and on appeal, Terrence argues that it was the historical practice of the parties to file their individual taxes collectively with WireVibe. Terrence argues that the 2013 tax refund had been generated solely by WireVibe's losses that year and the refund had been used to pay down company liabilities. He argues that the 2014 tax refund should have been treated the same way.

In dividing the 2014 income tax refund equally between the parties, the district court noted that the 2013 tax refund had been used to pay down company liabilities and that "both parties benefited from that money being utilized in that manner." But as to the 2014 income tax refund, the district court found that it should be divided equally between

14

the parties because they had been separated for almost half of 2014 and there was "no reason that husband should retain that entire refund moving forward." The district court's reasoning makes sense. The parties equally benefited from the 2013 tax refund because they were still living together as husband and wife during the entire year; likewise, the parties equally benefited from splitting the 2014 tax refund because they were separated for half of that year. We conclude that the district court did not abuse its discretion in dividing the 2014 joint income tax refund equally between the parties.

Finally, Terrence claims that as a result of the district court's errors in valuing WireVibe and in dividing the 2014 income tax refund, the district court abused its discretion in its overall division of the marital estate. But because we reject Terrence's claims on both of the specific issues he raises on appeal, we also find no abuse of discretion in the district court's overall division of the property. As the district court stated in its ruling from the bench: "I show . . . husband's division is $331,194. Wife's portion is $331,422. That's a difference of $228 in favor of wife which this Court finds to be fair, just, and equitable. An equal division is not required but this is pretty darn close." After reviewing the record, we agree that the district court's division of the marital property was fair, just, and equitable. Thus, we affirm the district court's judgment.

Affirmed.