No. 80,073

In the Matter of the Marriage of VICTORIA A. RODRIGUEZ,
*Appellee*, and FREDERICK C. RODRIGUEZ, *Appellant*.

(969 P.2d 880)

Opinion filed December 11, 1998.

*Thomas A. Krueger*, of Krueger, Larson & Aranda, of Emporia, argued the cause, and *Jeffrey J. Larson*, of the same firm, was on the brief for appellant.

*W. Irving Shaw*, of Emporia, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: Respondent Frederick C. Rodriguez appeals the trial court's division of assets pursuant to a divorce proceeding. Respondent is serving a 56-month prison sentence and participated in the division of disputed property hearing via telephone. The trial judge awarded approximately $90,000 in assets to petitioner and very little to respondent.

The trial judge considered all of the statutory factors pursuant to K.S.A. 1997 Supp. 60-1610(b), but appears to have placed emphasis in two areas. First, he found that the majority of disputed

property was either owned by petitioner at the time of the marriage or was acquired during the marital relationship as a result of petitioner's contributions to the assets which she owned prior to the marriage. The trial judge noted that some increase in the value of the real estate that petitioner owned at the time of the marriage was due to improvements to which respondent had contributed. The trial judge, however, deemed these improvements "sweat equity" and found that both parties had contributed equally to the improvements of the house owned by petitioner prior to the marriage. The trial judge found that the house acquired by the parties during the marriage would most likely have been impossible without the funds from the sale of the home owned by petitioner prior to the marriage. The real estate purchased during the marriage was acquired in 1993. The parties alternated making the mortgage payments on the house until 1995 when respondent was arrested for selling drugs to undercover agents. After respondent's arrest, petitioner made the remainder of the mortgage payments on the house.

The trial judge then considered the statutory factor of dissipation of assets and stated:

"In this regard, as a result of the respondent's illegal activities, assets of over $46,500 were squandered. It appears that $16,500 was actually paid to the respondent's defense attorneys and there is an additional $2,000 still owing. It appears there were vehicles lost of at least $15,000 depending upon the valuations ascribed to the parties. But even if I adopt the respondent's view it is at least $15,000. There was some $15,000 in cash seized that was admitted by the respondent, although the respondent indicated the petitioner knew that cash existed, nevertheless that doesn't mean that it is not loss. In addition to that $46,500 in assets, there was lost a number of items of jewelry that were seized by the State. Estimates, depending on whether you believe testimony of the parties or whether you believe the proposals made ranged in value from 6 - 7 hundred dollars to a high of $15,000. Nevertheless, it appears to me that that property is gone and not subject to distribution and it is of significant amounts so I can conclude that at least $46,500 in assets were squandered as a result of his activities."

Although not mentioned by the trial judge, the record also reflects the forfeiture of a savings account in the amount of $10,000, in addition to the other $15,000 forfeited due to respondent's illegal activities.

The trial court then awarded the home to petitioner which the parties agreed had about $46,000 in equity. In addition, petitioner was awarded her Iowa Beef Processing (IBP) profit sharing/pension plan which had increased in value by $51,890.19 during the course of the marital relationship. Respondent claimed an entitlement to a portion of the home and of petitioner's IBP profit sharing/pension plan gained during the marriage.

The trial judge stated that the evidence presented by the parties was insufficient to determine how much of petitioner's IBP profit sharing/pension plan was a "result of employer contributions versus employee contributions versus normal increases as a result of interest earnings on the amount of the pension and profit sharing plan prior to the marriage."

K.S.A. 1997 Supp. 60-1610(b)(1) sets out provisions for division of property:

"The decree shall divide the real and personal property of the parties . . . . In making the division of property the court shall consider the age of the parties; the duration of the marriage; the property owned by the parties; their present and future earning capacities; the time, source and manner of acquisition of property; family ties and obligations; the allowance of maintenance or lack thereof; *dissipation of assets;* the tax consequences of the property division upon the respective economic circumstances of the parties; and such other factors as the court considers necessary to make a just and reasonable division of property." (Emphasis added.)

The trial judge awarded petitioner real estate and property valued at over $90,000 but also assigned the corresponding debt remaining on the real estate and personal property to her. Respondent received his personal effects, *i.e.*, clothing, social security card, driver's license, billfold, and the Cancun vacation membership which petitioner testified she bought for $3,200. The judge acknowledged that this distribution essentially meant that petitioner received the bulk of the assets, as well as liabilities, and that respondent received basically his clothes and a very limited amount of property. The judge stated his reasoning for this distribution as follows:

"It strikes me that the dissipation of assets in this case should be the primary factor considered. Had the respondent not engaged in illegal activities there would

have been a substantial amount of cash, vehicles, jewelry and other monies available to the respondent. The respondent suggests that I should set that aside and simply divide what is left, but it does not appear to me that the petitioner was involved in any way in the illegal activities of the respondent such that I should penalize her for those activities on his part. Therefore, while this is an extremely unequal distribution of the property, I think it justified based on the circumstances of this case."

Respondent contends that the trial judge improperly considered the factor of dissipation of assets when dividing the parties' property. Respondent relies on the case of *In re Marriage of Smith*, 114 Ill. App. 3d 47, 448 N.E.2d 545 (1983), for his definition of dissipation of assets. In *Smith*, the court ruled that dissipation of assets may be found when a spouse uses marital property for his or her own benefit, for a purpose unrelated to the marriage, when the marriage is in serious jeopardy. 114 Ill. App. 3d at 51. Respondent then analyzes his situation in terms of the requirements of the Illinois *Smith* case and concludes that he did not dissipate assets because: (1) at the time that he lost the property, there was no evidence that the marriage was in serious jeopardy; and (2) only the money used for his attorney fees was actually used for his benefit.

Respondent next argues that he did not squander the remaining assets because they were taken from him when he was convicted of the drug charges. Further, he concludes that because the property was taken from him, he did not use it for his own benefit. Therefore, he did not dissipate assets within the meaning of that term under K.S.A. 1997 Supp. 60-1610(b)(1).

Although some states have adopted the Illinois analysis for dissipation of assets, other states do not require such a strict test. For example, in *Strang v. Strang*, 222 App. Div. 2d 975, 635 N.Y.S. 2d 786 (1995), the New York Supreme Court, Appellate Division, stated that the lower court had failed "to consider the alleged wasteful dissipation of marital assets by plaintiff. Where the wasteful dissipation of assets can be traced to a party's poor judgment, unwillingness or inability to manage, that portion of the amount dissipated must be charged against said party's equitable share . . . ." 222 App. Div. 2d at 977-78. The *Strang* court did

not require a specific time frame for dissipation but considered the test of whether one party had dissipated assets was whether the dissipation could be traced to such factors as poor judgment or an unwillingness to manage money.

Washington provides another example of a state that considers dissipation of assets in dividing property but does not follow the rigid time frame mandated by the Illinois courts. The Court of Appeals of Washington analyzed a claim of dissipation in the case of *In re Marriage of Williams*, 84 Wash. App. 263, 927 P.2d 679 (1996), *rev. denied* 131 Wash. 2d 1025 (1997). In the decree dissolving Glenda and Stanley Williams' 27-year marriage, the trial court found that during the latter years of their marriage, Glenda spent $10,000 to $12,000 per year on gambling. The trial court stated that "money spent on gambling was no different from money spent on any other entertainment and declined to adjust the property settlement to reflect it." 84 Wash. App. at 266-67. The Court of Appeals remarked that "Washington courts recognize that consideration of each party's responsibility for creating or dissipating marital assets is relevant to the just and equitable distribution of property. [Citations omitted.]" 84 Wash. App. at 270. The *Williams* court further stated:

"Stanley cites cases from Illinois and Wisconsin that established gambling may be considered a dissipation of marital assets. [Citations omitted.] Illinois, in particular, legislated against dissipation, loosely defined as 'where a spouse uses marital property for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage relationship is in serious jeopardy.' *Smith*, [114 Ill. App. 3d at 51]. Washington courts, on the other hand, focus instead on 'whose labor or negatively productive conduct was responsible for creating or dissipating certain marital assets.' [Citation omitted.]" 84 Wash. App. at 271.

The *Williams* court thus held that by balancing Glenda's extra income from her three jobs against her excessive spending, the trial court did not abuse its discretion in deciding to include the gambling related debts in the parties' total liabilities. 84 Wash. App. at 271.

We hold it is unnecessary to adopt respondent's definition of dissipation of assets because the statute is plain and unambiguous. " 'When a statute is plain and unambiguous, the court must give

effect to the intention of the legislature as expressed, rather than determine what the law should or should not be.' [Citation omitted.]" *State ex rel. Secretary of SRS v. Guy*, 23 Kan. App. 2d 943, 949, 937 P.2d 1252 (1997). Likewise, "[w]here the statute is plain and unambiguous, there is no room left for a judicial construction so as to change the language employed therein.' [Citation omitted.]" 23 Kan. App. 2d at 949.

To "dissipate" has a defined and accepted meaning. Black's Law Dictionary 473 (6th ed. 1990) defines dissipate as "[t]o destroy or waste, as to expend funds foolishly." Webster's New Collegiate Dictionary 366 (9th ed. 1991) defines the term as "a: to expend aimlessly or foolishly b: to use up esp. foolishly or heedlessly."

As we read the Kansas statute, we believe the legislative intent is clear in that it allows a trial judge wide latitude to divide marital property and this latitude provides the judge with discretion to consider whether marital assets were lost as a result of the wrongful conduct of one of the parties to the marriage.

The plain meaning of "to dissipate" does not require the time frame imposed by Illinois and states following the Illinois rule. The Kansas Legislature has provided no indication that dissipation should be interpreted following the Illinois rule or that the term should have any unique significance beyond its ordinary meaning. Therefore, any judicial evaluation that would change the language of the statute would be contrary to the established rules of statutory construction.

The district court "has wide discretion in adjusting the financial obligations of the parties in a divorce action. Exercise of that discretion will not be disturbed on appeal unless clear abuse of discretion is shown. [Citation omitted.]" *In re Marriage of Monslow*, 259 Kan. 412, 414, 912 P.2d 735 (1996). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. *In re Marriage of Wade*, 20 Kan. App. 2d 159, 168, 884 P.2d 736 (1994), *rev. denied* 256 Kan. 995 (1995).

In the case of *In re Marriage of Brane*, 21 Kan. App. 2d 778, 781, 908 P.2d 625 (1995), the court noted that Kansas, as an equitable division state rather than a community property state, does not require an equal split of all property acquired during the mar-

riage. Rather, Kansas law gives the court discretion to consider all of the property, regardless of when acquired, to arrive at a just and reasonable division." *Brane*, 21 Kan. App. 2d at 782. In *Gronquist v. Gronquist*, 7 Kan. App. 2d 583, 585, 644 P.2d 1365 (1982), the court stated:

"[T]here is a significant theoretical difference between Kansas law and community property law since in Kansas the court has discretion to award marital property entirely to one party so long as the overall division is fair. Property acquired during the marriage may continue to be identified as that of one party although the other party to the divorce will have the right to some offsetting value accomplished either within the property division or by the award of alimony."

Here we are basically dealing with two assets—a home and petitioner's pension. The purchase of the disputed home was made possible by petitioner's ownership of a home when the marriage occurred. The disputed home was still a marital asset because petitioner made all the payments after respondent was arrested in 1995. Without petitioner's payments, the home would have been lost or a forced sale would have occurred.

The second major asset was petitioner's profit sharing plan. Petitioner had a profit sharing plan, as did respondent when the marriage occurred. As to petitioner's pension, there is no evidence in the record to show what amount of the increase in value was due to petitioner's contributions or the employer's contributions, or simply to an increase in the value of the assets held in the plan. Respondent has the burden of furnishing a record that demonstrates error.

Here the record and briefs refer to petitioner receiving over $90,000 in property. It appears to us that forfeiture and attorney fees actually paid total some $56,000. Thus, barring respondent's criminal activities, the marital assets would have totaled approximately $146,000, or $73,000 per person if the assets were divided 50-50. However, as a direct result of respondent's illegal activities, he lost approximately $56,000 in marital assets. When that sum is charged against the $73,000, respondent's 50-50 share would be reduced to $17,000.

The general rule in dividing property in divorce cases, as articulated in *In re Marriage of Cray*, 254 Kan. 376, 386, 867 P.2d 291 (1994), is:

"This court has recognized on numerous occasions the importance in allowing a trial court broad discretion in determining what is just and reasonable in the division of marital property. The breadth of this discretion was recognized in *LaRue v. LaRue*, 216 Kan. 242, 250, 531 P.2d 84 (1975), where the court stated: 'Nowhere in any of our decisions is it suggested that a division of all the property of the parties must be an equal division in order to be just and reasonable.' The legislature has left this discretion to the trial courts, and if there is to be a change in that discretion then it is a matter for the legislature."

The trial court considered the time, source, and manner of acquisition of the property. The trial judge mentioned the fact that petitioner owned a house and several cars at the time of the marriage and the lack of evidence concerning petitioner's profit sharing plan and then gave respondent between $3,000 and $5,000 worth of assets. Looking at the division of marital assets in that light, we cannot say the trial court abused its discretion in this case.

Affirmed.