NOT DESIGNATED FOR PUBLICATION

No. 123,219

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
MICHAEL J. ROBINSON,
*Appellant,*

and

VIRGINIA ROBINSON,
*Appellee.*

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed November 12, 2021. Affirmed.

*H. Reed Walker*, of Reed Walker PA, of Overland Park, for appellant.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, and *William H. Reynolds*, of The Reynolds Law Firm, LLC, of Kansas City, Missouri, for appellee.

Before ATCHESON, P.J., BRUNS and ISHERWOOD, JJ.

PER CURIAM: Michael Robinson appeals the district court's division of marital property between he and his former wife, Virginia Robinson, and raises two points of error. First, he argues that the district court did not properly weigh the factors enumerated in K.S.A. 2020 Supp. 23-2802(c). Second, he contends the court improperly applied a fault standard in arriving at its calculation. For her part, Virginia filed a motion with this court under Kansas Supreme Court Rule 7.07(b) (2021 Kan. S. Ct. R. 51) and K.S.A. 2020 Supp. 23-2715 seeking to recover attorney fees expended to litigate this appeal.

1

We decline to find the district court's property distribution amounted to an abuse of discretion and similarly reject Michael's contention that the district court impermissibly employed a fault standard as part of its property division calculus. Thus, we affirm the district court. We likewise decline to award Virginia the attorney fees she incurred as part of this appeal.

FACTUAL AND PROCEDURAL BACKGROUND

Michael and Virginia Robinson married in 1996 and lived together until their separation in 2011. In 2013, Michael filed for divorce and Virginia filed a counterpetition soon after.

It is undisputed that substantial gifts and a multimillion-dollar inheritance from Michael's parents provided the well from which the couple consistently dipped to sustain their incredibly affluent lifestyle. Neither Michael nor Virginia was gainfully employed following their arrival in Kansas City in 2002. Michael's parents gifted the couple a hotel in downtown Kansas City, Missouri, which the couple later sold for roughly $4.5 million. Following the death of his mother in 2006, Michael inherited between $12.5 and $15.5 million. While that well was significant, its resources were nevertheless finite, and the couple's seeming inability to curtail or exercise restraint in their spending resulted in a remarkably rapid depletion of those funds.

Over their seventeen-year union, the couple accumulated assets in various forms, including real estate, artwork, and other personal property. Together with their marital home in Mission Hills, Kansas, the couple owned a lake home in Lake Viking, Missouri; three condominiums in Kansas City, Missouri; apartments in Paris, France and Montevideo, Uruguay; and an office building in Overland Park, Kansas. Altogether, the value of the couple's residential real estate was about $3.5 million. Michael and Virginia also curated an extensive art collection that included works by well-known artists such as

Lenora Carrington, Marc Chagall, Jean Dufy, and Pablo Picasso. Michael also had a Morgan Stanley account worth approximately $1 million.

The case was rather unconventional and, in a diligent effort to ensure it adequately addressed the unique issues presented, the district court appointed two special masters. The responsibility of one was to manage and sell the couple's artwork while the other was tasked with liquidating their real estate and depositing the proceeds from those transactions into the court's trust account.

Dissolution of the marriage proved no easy feat and over four years passed before its full and final resolution. Many times, Michael interfered with the special masters' activities. In one instance, the court held him in contempt for failing to relinquish a specific piece of artwork so that it could be sold and jailed him until he agreed to comply. Three years later, the court again cited him for contempt upon learning that he sold two pieces of real estate in violation of the court's order and failed to deliver financial documents as directed. Finally, the court issued a writ of restitution and execution after Michael refused to allow a special master into the marital home to conduct an inventory of their artwork and inspect the home in anticipation of its sale. Michael's contumacious behavior during the pendency of the case prompted the court to enter a finding at its conclusion that his behavior throughout demonstrated "a complete lack of candor to the court."

The court conducted an evidentiary hearing to flesh out the veracity of Michael's claim that over the four to five years preceding his divorce petition, Virginia systematically and impermissibly siphoned around $2 million out of his personal Morgan Stanley account to fund her personal and business ventures in Uruguay. To support his theory that Virginia had been living off ill-gotten gains, Michael introduced the testimony of handwriting expert Thomas Vastrick. Vastrick informed the court that of the checks Michael drafted between 2007 and 2012, 72 appeared to have been forged. In contrast,

Virginia asserted that she only withdrew the amounts necessary to cover her living expenses and maintain the couple's joint business venture and that Michael authorized each expenditure. She offered evidence through certified public accountant Seth Liebsen to counter Vastrick's testimony. According to Liebsen, Virginia's withdrawals pointed to legitimate, not secret, activity. Following a review of the evidence, the court determined there was not sufficient evidence to support Michael's contention that Virginia surreptitiously funneled money out of his account.

The case finally ended, and the court issued a decree of divorce that explored each factor under K.S.A. 2020 Supp. 23-2802(c). The court concluded there was "no discernible net worth attributable to or accumulated by either party as a result of marital efforts, aside from any increase in fair market value of property obtained by the parties" over the course of the marriage. The court found that while Michael was the beneficiary of a substantial inheritance, the parties comingled their assets over the course of their nearly two decades long marriage and effectively converted those individual gifts into divisible marital assets.

Michael moved to alter and amend the judgment, citing four grounds of contention: (1) the court erred when it found that Michael dissipated the value of the Lake Viking home; (2) he is entitled to all the couples' assets because they stem from his inheritance; (3) the court erred when it found Virginia did not impermissibly withdraw $2 million from Michael's personal bank account; and (4) the court's orders to sell artwork and distribute the proceeds to Virginia was an abuse of discretion. The court denied Michael's motion.

Michael timely filed this appeal. While the matter was pending, Virginia filed a motion for attorney fees pursuant to Supreme Court Rule 7.07(b). Having considered the parties' briefs and reviewed the record on appeal, we affirm the district court's judgment and deny Virginia's motion for attorney fees.

4

*Whether the District Court's Division of the Couple's Marital Property Constituted an Abuse of Discretion?*

Michael's challenge to the court's divorce decree is two-fold. First, he argues that the court erred in its conclusion that Virginia did not secretly extract money from his personal Morgan Stanley account. Second, he contends that because the court found that neither party worked to generate wealth during the marriage, it was an abuse of discretion to award a substantial portion of the marital assets to Virginia.

Before delving into the substance of Michael's claims, we believe it is important to summarize the standard which governs our review of this issue, as well as Kansas law regarding the division of marital property. District courts have broad discretion to adjust the property rights and financial affairs of parties involved in a divorce action. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). Absent a clear showing of abuse, appellate courts will not disturb the exercise of that discretion, and the party asserting the district court abused its discretion bears the burden of establishing such abuse. *In re Marriage of Hair*, 40 Kan.App.2d 475, 480, 193 P.3d 504 (2008), *rev. denied* 288 Kan. 831 (2009). For purposes of this case, that means Michael carries the burden of substantiating his claims. A judicial action constitutes an abuse of discretion

> "if [the] judicial action (1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable
> person would have taken the view adopted by the trial court; (2) is based on an error of
> law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) is based on an
> error of fact, i.e., if substantial competent evidence does not support a factual finding on
> which a prerequisite conclusion of law or the exercise of discretion, is based." *State v.
> Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

At the commencement of a divorce proceeding, all the property owned by the parties becomes part of the marital estate regardless of whether the property was "owned

by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage[,] or acquired by the spouses' joint efforts." K.S.A. 2020 Supp. 23-2802(a). Although each spouse has common ownership in the marital property, the extent of each party's respective interest must be determined by the district court under K.S.A. 2020 Supp. 23-2802. K.S.A. 2020 Supp. 23-2801(b). The district court must make "a just and reasonable division of [the marital] property," and when undertaking this task, it shall consider:

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 2020 Supp. 23-2802(c).

We find it important to note that district courts are not required to make an equal division of all property acquired during the marriage. *In re Marriage of Rodriguez*, 266 Kan. 347, 352-53, 969 P.2d 880 (1998). The overall division must simply be just and reasonable, it need not be equal. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010).

Again, Michael's first point of error challenges the district court's conclusion about the propriety of Virginia's acquisition of nearly $2 million from Michael's Morgan Stanley account. Unfortunately, the way he briefed the issue fails to provide us with the proper tools to undertake a comprehensive assessment of its merits. Michael neglects to provide us with evidence and a corresponding legal analysis to sustain his burden to demonstrate how the court went astray through either factual or legal error, or otherwise traveled a path that ended with an arbitrary and unreasonable outcome. Rather, he essentially lays his summation of the evidence at our feet to leave us to our own devices.

6

But under our governing standard of review, we do not reweigh or resolve conflicts in the evidence. See *State v. Reed*, 300 Kan. 494, 499, 332 P.3d 172 (2014) (In determining whether a district court abused its discretion, we do not reweigh the evidence, assess the credibility of the witnesses, or resolve evidentiary conflicts.). This court is prohibited from fashioning arguments on behalf of the parties.

The district court conducted an extensive hearing to resolve this matter. In that respect, that judge was in the best position to assess the credibility of the testifying witnesses and the evidence presented. We decline Michael's invitation to re-evaluate that credibility and substitute our judgment on the matter for that of the district court. The district court's decision on this issue is affirmed.

The second prong of his argument under this issue suffers the same shortcomings. His issue statement notifies us that he believes the district court's property distribution was flawed. The text which follows, however, simply provides an abbreviated explanation of why he finds the court's conclusion unfair. Interestingly, Michael estimates he received about $12.1 million in assets as a product of the court's distribution, while Virginia received about $4.4 million. Virginia disputes these individual figures as significantly inflated but asserts a comparable disparity exists between the amounts awarded to each with Michael being the greater beneficiary. Nevertheless, Michael again fails to advance any measure of argument that serves to present and confirm a claim that the district court's finding is either factually or legally flawed or that its conclusion was arbitrary or unreasonable.

Where a party to an appeal fails to brief an issue, that issue is waived or abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 643, 294 P.3d 287 (2013).

"'Failure to properly state the points relied on indicates a lack of understanding of the appellate function and process. . . . It is not the function of the appellate court to serve as advocate for any party to an appeal. That is the function of counsel. It would be unfair to the parties if it were otherwise. That is the reason for the sometimes expressed unwillingness of an appellate court to assume the role of counsel and advocate for a party on appeal. When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role. In addition to being inherently unfair to the other party to the appeal, it is unfair to parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals.'" *Hoskinson v. Heiman*, No. 122,120, 2021 WL 2282688, at \*3 (Kan. App. 2021) (unpublished opinion) (quoting *Thummel v. King*, 570 S.W.2d 679, 686 [Mo. 1978]).

Michael's failure to adequately brief a challenge to the district court's property distribution truly results in an abandonment of that claim.

Nevertheless, a district court may properly include inherited property when dividing all marital assets between divorcing parties. See 2 Elrod, Kan. Law & Practice: Kansas Family Law § 10:8 (January 2021 update); see also *In re Marriage of Zimmerman*, No. 95,722, 2007 WL 656409 (Kan. App. 2007) (unpublished opinion). In *Zimmerman*, the Husband similarly argued that his former spouse received a disproportionate amount of his inherited property. A panel of this court affirmed the district court's finding that the couple had "lived almost exclusively off the inherited money," and thereby transformed the husband's inherited property into divisible marital property. 2007 WL 656409, at \*3.

The arrangement before us is nearly identical to that in *Zimmerman*. Michael did not undertake efforts to isolate his inherited assets from the couple's marital assets. Rather, that inheritance was liquidated, reinvested, and provided the coffer which funded their lifestyle. As in *Zimmerman*, the district court's decision in this case, likewise, was not an abuse of discretion. The district court's division of the property is affirmed.

*Whether the District Court Improperly Applied a Fault Standard as Part of Its Property Division Analysis?*

This issue likewise presents a challenge to the propriety of the district court's distribution of marital assets. Thus, we again view the claim through the lens of an abuse of discretion standard. *In re Marriage of Hair*, 40 Kan. App. 2d at 480.

When seeking to divide marital property in a fair and just manner, a district court may properly consider a party's dissipation of assets. See K.S.A. 2020 Supp. 23-2802(c)(8). In the second issue Michael presents for our consideration, he acknowledges the validity of K.S.A. 2020 Supp. 23-2802(c)(8) but contends the district court here applied it in a punitive fashion in violation of *In re Marriage of Sommers*, 246 Kan. 652, 657, 792 P.2d 1005 (1990), which prohibits courts from imposing financial penalties based on fault in divorce cases.

Before delving into the merits of Michael's claim, we pause to note that our review of the record reveals that he did not present this issue or cite *Sommers* for the district court's consideration either during the proceedings or in his motion to alter or amend judgment. As a result, we would be well within our right to find that Michael is precluded from challenging the allegedly deficient findings on appeal. See *In re Marriage of Oliver*, No. 109,872, 2014 WL 802464, at *5-6 (Kan. App. 2014) (unpublished opinion) (refusing to review an issue in divorce case that was not preserved). In the present case, however, the record is sufficient for this court to conduct a meaningful review.

9

In divorce cases, "fault" is a term of art relating to one party's culpability in the disintegration of the marriage. In *Sommers*, for example, the Supreme Court remanded a divorce case because the district court considered a husband's alleged marital infidelity when dividing marital assets. 246 Kan. at 655-56, 659. The court reasoned that since Kansas has adopted a no-fault divorce regime, it is improper for courts to consider factors other than those set forth at K.S.A. 23-2802(c). 246 Kan. at 655-56.

As Michael acknowledges, though, K.S.A. 2020 Supp. 23-2802(c)(8) explicitly states that courts may properly consider a party's dissipation of assets when dividing property. Indeed, the district court here found that Michael dissipated real estate assets in violation of the court's orders throughout the case. Michael tries to evade this point by arguing that although a finding of dissipation is proper under the statute, "it is not to be applied punitively, as was apparently done in this case."

This logic does not withstand scrutiny. Michael employs use of the term "punitively" to mean "negatively" or, more specifically, in a way that might reduce his share of the assets. But this reasoning is circular and perhaps reflects a lack of appreciation as to the function of this factor. Dissipation is an option available to district courts to calibrate the scales when the unscrupulous conduct of one spouse serves to undermine the acquisitions of the other. As it relates to this case, the district court properly determined that since Michael intentionally dissipated marital assets in violation of court orders, his share of the marital assets should be reduced. This decision, unlike the reduction of assets for marital infidelity in *Sommers*, falls outside the sphere of punishing Michael for any behavior that may have led to the parties' decision to file for divorce. Michael has failed to establish that the district court abused its discretion in this respect.

*Whether Virginia is Entitled to Attorney Fees for the Costs Incurred to Litigate This Appeal?*

Whether a court has the authority to award attorney fees is a question of law over which we exercise unlimited review. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013).

Virginia timely filed a motion for attorney fees pursuant to Kansas Supreme Court Rule 7.07(b)(2) and K.S.A. 2020 Supp. 23-2715. She argued that Michael's appeal is "obviously without merit and never had a shred of a chance of success," but that he "dragged [her] through it anyway."

As provided in K.S.A. 2020 Supp. 23-2715, a court may grant either party costs and attorney fees "as justice and equity require" in a divorce action. The outcome of a legal dispute does not dictate a fee award under K.S.A. 2020 Supp. 23-2715. That is, the provision does not act as a fee-shifting statute requiring an award to the prevailing party. *In re Marriage of Langley*, No. 115,829, 2017 WL 1534853, at *8-9 (Kan. Ct. App. 2017) (unpublished opinion).

We are not persuaded that justice and equity dictate that Virginia receive a second award of attorney fees to complement that already granted by the district court to compensate for the proceedings conducted below. We acknowledge that Virginia asserts in her motion that such an award is warranted here because Michael's appeal was unlikely to succeed. But her motion was filed under Supreme Court Rule 7.07(b)(2), not subsection (c), the section which addresses appeals taken frivolously or only for the purpose of harassment or delay. We therefore reject the latter subsection as justification for a fee award here.

Even if filing under the proper subsection was of no moment to us, we still would not be inclined to grant the motion. We declined to undertake an analysis of Michael's first issue because we did not receive the requisite tools to do so, not because the issue was frivolous. The fair and just division of marital property can be an appropriate issue to litigate on appeal in a particularized factual environment. Thus, it is not a baseless matter on its face. *Porter v. Stormont-Vail Hospital*, 228 Kan. 641, 647-48, 621 P.2d 411 (1980). Given the lack of published appellate authority on the treatment of inheritances on marital property—especially when they accrue to one spouse and constitute the bulk of the property—we decline to find Michael's appeal of this point to be wholly without merit. Virginia's motion for attorney fees is denied.

Affirmed.