NOT DESIGNATED FOR PUBLICATION

No. 126,458

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

PAUL T. ELFGREN,
*Appellant*,

and

JILL M. HENDRICKSON,
*Appellee.*

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Submitted without oral argument. Opinion filed May 31, 2024. Affirmed in part, reversed in part, and remanded with directions.

*H. Reed Walker*, of Reed Walker, PA, of Overland Park, for appellant.

*Sarah Carmody*, of Sarah Carmody Law, LLC, of Overland Park, for appellee.

Before COBLE, P.J., GREEN, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: After over 20 years of marriage, Paul T. Elfgren (Husband) and Jill M. Hendrickson (Wife) filed for a divorce. When the parties were unable to agree on property division, the district court divided the marital property following an evidentiary hearing and ordered Wife to pay an equalization payment to Husband. On appeal, Husband argues the district court abused its discretion when dividing the marital property because it improperly found he dissipated marital assets and erred in evaluating the marital home and various other pieces of personal property. We find Husband did not meet his burden of showing the district court abused its discretion on all issues except the

1

credit to Wife for the reduction in mortgage principal. We affirm in large part the district court's division of property but reverse the district court's decision to subtract the reduction in mortgage principal from Wife's final equalization payment and remand the issue to the district court for recalculation of the equalization. We also grant Wife's request for appellate attorney fees.

FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Husband and Wife married in Olathe, Kansas. Over 20 years later, the couple separated, and ultimately both parties petitioned for a divorce in 2021. Prior to their separation, the couple shared a marital residence in Kansas City, Kansas. The couple did not have any minor children during the marriage, but they shared a cat, Cosmo, and a dog, Beau.

At the parties' agreement, the district court granted the divorce through bifurcation in November 2021. But the district court delayed addressing "[p]roperty division and any other final orders" until a later date.

A few months after the divorce, Wife filed a notice of service of discovery requests. Husband's filings remained silent until three months later, when he moved for temporary possession of Cosmo and Beau. About one month later, Wife asked the district court to compel discovery and award attorney fees based on Husband's failure to produce the requested materials. She simultaneously moved to continue the trial based on Husband's failure to produce various affidavits, copies of financial documents, and information pertaining to his civil lawsuit settlement.

After a hearing on these pending motions, the district court ordered the trial continued only if Husband failed to immediately provide the missing discovery. And at a hearing a few weeks later, the district court continued the trial date, over Husband's

objections, based on his failure to provide the requested discovery. The district court ordered Husband to provide certain financial statements, awarded him alternate weekend custody of Beau, and reset the matter for trial.

Before trial, Wife filed a bench brief in which she lodged multiple allegations against Husband about issues occurring during their marriage. For one, Wife claimed the Federal Bureau of Investigation executed a search warrant on their marital home as part of a criminal investigation into Husband's side business, EEZ Container, LLC. She further alleged Husband's former employer, TSL Terminals, Ltd. (TSL) initiated a civil lawsuit against him in federal court.

As part of the divorce proceedings, Wife submitted as an exhibit a permanent injunction and judgment filed in the United States District Court for the District of Kansas. According to this document, Husband was a long-term employee of TSL and held a senior managerial position until TSL terminated his employment in 2017. In its own words, TSL is an international provider of storage facilities, including the purchases and sales of excess containers, for major ocean-going shipping companies.

After terminating his employment, TSL initiated the lawsuit against Husband and claimed he breached various duties, including a fiduciary duty and a duty of loyalty, when he engaged in a fraudulent diversion of business from TSL to himself and EEZ Container. The parties reached a settlement and Husband did not dispute the claims for the purpose of the settlement but did not admit such claims. As part of the judgment, the district court ordered Husband to pay an undisclosed sum and to transfer to TSL all EEZ Container's "containers, trade name, telephone number, website URL's and email domains." Among other things, the district court ordered Husband to dissolve his EEZ Container business and permanently enjoined him from participating in, or conducting any business or transactions, involving storage containers.

3

Wife's bench brief included other allegations based on her "understanding" of Husband's settlement, which included $500,000 in surrendered shipping containers and settlement fees. She claimed Husband met his settlement obligation by withdrawing the funds from a marital account, claimed the cost of attorney fees for the civil suit was $45,000, and alleged Husband violated the terms of the settlement by continuing to conduct business as EEZ Containers.

Outside of his business practices, Wife's bench brief also contained allegations of marital infidelity on Husband's part. She claimed he dissipated marital funds when he gave money to women and paid for the women's living expenses.

Wife's bench brief also addressed Husband's conduct after filing for divorce. She claimed he "deliberately misled" the district court by hiding his dissipation of more than $700,000 in assets. She argued Husband made a frivolous claim for maintenance, which he ultimately waived. She also alleged he tried to sell the marital residence, where she was living, without her knowledge based on claims she was not caring for the property. And she claimed Husband then tried to move back into the house, while trying to force her to leave, despite lacking permission to do so. The district court addressed similar arguments from Wife a year before trial, when it ordered Husband not to contact Wife regarding the property maintenance, not to go in or around the marital property, and to "not unilaterally list the house for sale." The court also ordered Husband to return the equipment Wife needed to care for the home's lawn. Wife later moved for an order to show cause based on Husband's willful and intentional disregard of these orders. Wife claims she asked for a bifurcated divorce "[a]round the same time" because she was concerned about her personal liability regarding Husband's violation of his settlement agreement.

Wife's bench brief also alleged extensive details regarding Husband's refusal to comply with discovery. She outlined three instances where she requested discovery and

4

Husband did not respond, along with other instances where Husband responded but did not truly comply, such as producing only portions of bank statements such that transactions were hidden, and refusing to produce an entire year of statements. And she points out that instead of responding to her requests for discovery, Husband chose to seek temporary custody of their dog. Wife claimed Husband did not produce additional documents until she filed motions to compel discovery and continue the trial, and "after both attorneys . . . had multiple in chambers conferences with the Court . . . ."

The district court held a bench trial on November 3, 2022, to address issues related to property division. Of relevance to Husband's claims on appeal, the district court found:

- The marital residence had a fair market value of $552,250. The district court set aside to Wife sole liability for the mortgage and related expenses. The district court also awarded her a credit for the reduction of the principal amount of $22,227.90 for her sole payments on the mortgage during the case.
- The district ordered Husband to have sole possession of a vehicle, a motorcycle, and two trailers.
- The district court divided the parties' financial accounts pursuant to an agreement by the parties.
- The district court found Husband "dissipated the marital estate in the amount of $527,000" and awarded Wife one-half, or $263,500, to account for the final division of property. But it found it was unable to determine whether Husband dissipated marital assets based on Wife's clams of infidelity.
- The district court awarded Wife with "'primary residency'" of the dog, Beau, and ordered the parties use certain services for changing possession of Beau.
- The district court ordered Husband to pay $5,000 of Wife's attorney fees "[d]ue to issues with discovery . . . ."

- Based on this division of assets, the district court ordered Wife to pay an equalization payment with a "net amount of $85,190.79" to Husband. The district court arrived at this net figure by calculating an overall equalization payment of $375,918.69, then reducing that figure based on the dissipation amount and expenses awarded at trial as follows:
  - $375,918.69 [equalization payment] - $263,500 [the dissipation amount] - $22,227.90 [credit reduction in principle of mortgage] - $5,000 [attorney fee award] = $85,190.79 [net equalization payment from Wife to Husband].

After the journal entry was filed, Husband timely moved to alter or amend the district court's judgment, arguing the district court should adjust its equalization payment because, among other things, it improperly found he dissipated assets through EEZ Container. The district court denied his motion after a hearing, finding in part that some of the numbers and exhibits presented by Husband were not presented at trial and the property division was equitable based on evidence presented at trial.

Husband appeals.

HUSBAND'S DISSIPATION OF MARITAL ASSETS

In his first issue on appeal, Husband argues the district court abused its discretion when it reduced Wife's equalization payment based on his dissipation of assets, contending this decision was unsupported by the law and contrary to the evidence.

Appellate courts review a district court's division of property in a divorce for an abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002); *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 261, 452 P.3d 392 (2019). A district court abuses its discretion when its decision is: (1) arbitrary, fanciful, or unreasonable;

6

(2) based on an error of law; or (3) based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

As the party claiming the district court abused its discretion, Husband bears the burden of showing as much. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017). And because the district court has "'wide discretion'" in adjusting the financial obligations of the parties in a divorce action, we do not disturb the district court's findings unless a "'clear abuse of discretion'" is shown. *In re Marriage of Rodriguez*, 266 Kan. 347, 352, 969 P.3d 880 (1998).

District courts are required to divide the parties' real and personal property pursuant to K.S.A. 23-2801 et seq. Relevant here, the family law code requires district courts "shall consider . . . dissipation of assets" under K.S.A. 23-2802(c)(8). In *In re Marriage of Rodriguez*, our Supreme Court explained the intent of the dissipation statute:

> "[W]e believe the legislative intent is clear in that it allows a trial judge wide latitude to divide marital property and this latitude provides the judge with discretion to consider whether marital assets were lost as a result of the wrongful conduct of one of the parties to the marriage." 266 Kan. at 352.

Although Husband acknowledges *In re Marriage of Rodriguez*, he argues its nearly 30-year-old rule "run[s] contrary" to an earlier case, *In re Marriage of Sommers*, 246 Kan. 652, 792 P.2d 1005 (1990). In *Sommers*, the court found "[in domestic relations actions] it is the legislative intent that fault not be considered by a trial court in considering the financial aspects of the dissolution of a marriage.'" 246 Kan. 652, Syl. ¶ 2. But while Husband's quotation of *Sommers* is technically accurate, he ignores the underlying analyses of the two cases.

7

In *In re Marriage of Rodriguez*, the Kansas Supreme Court looked directly at the dissipation statute to determine its language was plain and unambiguous. Based on the "defined and accepted meaning" of "'dissipate'" the *Rodriguez* court concluded the Kansas Legislature's intent under the dissipation statute was to permit district courts to consider whether marital assets were lost because of the wrongful conduct of one party to the marriage. 266 Kan. at 349, 352 (reviewing K.S.A. 1997 Supp. 60-1610[b][1], the prior version of K.S.A. 23-2802[c][10]; both statutes require district courts to "consider . . . such other factors as the court considers necessary to make a just and reasonable division of property").

But the *Sommers* court did not consider whether one of the parties dissipated assets during the marriage. Rather, the court analyzed whether a district court erred when it considered the husband's alleged infidelity—that is, "fault" in terms of the underlying cause of the marriage's failure—to determine certain financial aspects of the divorce. 246 Kan. at 655. There, the district court "specifically stated it considered [husband's] marital infidelity . . . in resolving the financial matters. The clear inference is that the trial court penalized [the husband] for his fault in making its findings relative to the financial aspects involved in the dissolution of marriage." 246 Kan. at 656. Our Supreme Court found the district court's financial penalty based on alleged fault was an error of law because "the term fault must be confined to a term of art relative to a ground for dissolution of the marriage and penalties arising therefrom." 246 Kan. at 657. And in *Sommers*, after prohibiting consideration of fault, the court went on to clarify, "evidence of circumstances relevant to particular aspects of the financial matters to be determined in the dissolution of a marriage may be properly considered by the trial court even though evidence of one party's misconduct may be involved." 246 Kan. 652, Syl. ¶ 3. The court explained this consideration does not equate to a penalty but is instead a "realistic evaluation of the parties' circumstances, future income, and needs." 246 Kan. 652, Syl. ¶ 3.

Likewise, here the district court did not find Husband at fault for causing the dissolution of the marriage, nor was he penalized for alleged infidelity. Rather, Husband's use of marital assets to fund his legal settlement was simply a financial aspect of the parties' marriage properly considered by the trial court. The court specified, both in its oral rulings and the journal entry, it was not considering fault for dissolution of the marriage but was analyzing dissipation because it was relevant to a fair, just, and equitable division of the marital assets. And, under *In re Marriage of Rodriguez,* the district court had the legal authority to consider whether Husband's actions dissipated assets during their marriage. Husband's claim that the trial court made an error of law by considering dissipation fails.

So, the district court was correct to consider dissipation, but did it apply the law appropriately to the facts of this case? Aside from making very broad claims that the district court abused its discretion, Husband does not seem to argue the district court made any specific errors of fact, or that the district court's action was unreasonable. Regardless of whether he articulated those arguments, we have no trouble finding the record supports the district court's decision.

The *In re Marriage of Rodriguez* court accepted these definitions of dissipate:

> "To 'dissipate' has a defined and accepted meaning. Black's Law Dictionary 473 (6th ed. 1990) defines dissipate as '[t]o destroy or waste, as to expend funds foolishly.' Webster's New Collegiate Dictionary 366 (9th ed. 1991) defines the term as 'a: to expend aimlessly or foolishly b: to use up esp. foolishly or heedlessly.'" 266 Kan. at 352.

Based on these definitions, then, Husband's conduction of the EEZ Container business, which subjected him to a civil lawsuit and settlement, constitute dissipation if he destroyed, wasted, or expended funds foolishly or heedlessly. See 266 Kan. at 352.

9

As previously detailed, the record shows Husband's former employer sued him for various breaches of duty and fraudulent actions, essentially diverting business to himself. A reasonable fact-finder could consider that his diversion of business from his employer to himself was a heedless, reckless action, rising to the level of wrongful conduct. Although Husband characterizes it as simply "bad business judgment" and suggests because he was not charged with a crime his business decision is above board, he has not convinced us that the district court's finding of dissipation here was an abuse of its discretion.

Despite refusing to admit he breached his various duties, Husband nevertheless admitted he was aware of his duties to TSL, admitted his access to confidential data as part of his employment, and did not dispute he breached his duties and engaged in fraudulent diversion of business from his employer to EEZ Container. He does not suggest Wife was a part of his business activities, either—in effect, admitting the business decisions were his alone—but just argues she benefitted from the money earned.

And while he may not have admitted to his breach in duties based on these duties, he was nevertheless held personally responsible for those admitted breaches when he was ordered to pay certain sums to TSL and required to transfer EEZ Container's assets and business to TSL. Even if he did not admit to the underlying actions, he willfully settled the claim for fraud and utilized marital assets to pay that claim. He also admitted the breaches occurred in 2015 and the record shows the settlement occurred in 2018—both during the parties' marriage. The record supports the district court's finding that Husband dissipated assets during the marriage because he wasted or expended funds foolishly when he was found liable for breaches of his duty regarding his personal employment. See 266 Kan. at 352.

As for the calculation of the dissipation amount, Husband does not dispute the amount of dissipation the district court awarded, and admits he used retirement funds and

10

a joint bank account to both settle the lawsuit and pay his attorneys. Because he makes no argument regarding the amount of dissipation ordered but only the fact it was ordered at all, he has not shown the district court erred in its calculation. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020) (an issue not briefed is deemed waived or abandoned).

Husband makes an additional argument on appeal contending his settlement was funded by revenue generated by EEZ Container so the funds were his separate property under K.S.A. 23-2604 at that time, only becoming marital funds when the divorce was filed after the settlement was concluded. But this argument is improper for a few reasons.

First, Husband improperly presents this argument for the first time on appeal. Generally, arguments not raised before the trial court cannot be raised for the first time on appeal. See *State v. Cheffen*, 297 Kan. 689, 698, 303 P.3d 1261 (2013). And he makes no effort to explain why he makes this new argument, which is required by Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) (mandating appellants raising arguments for the first time on appeal explain in their briefs why they did not make their newly raised arguments before the trial court). For these reasons, Husband has abandoned his ability to present the argument to us. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Even if we did consider his claim, Husband does not explain why K.S.A. 23-2604—which permits a married person to carry on a separate business and utilize and invest any proceeds separately—applies to the division of assets in a divorce proceeding. This provision is contained within Article 26 of the revised Kansas Family Law Code governing "Marital Property Rights." That Article does not consider the dissolution of marriage and subsequent division of property, which is governed by Articles 27 and 28, respectively. See K.S.A. 23-2701 et seq.; K.S.A. 23-2801 et seq.

Husband's argument also ignores the basic parameters of K.S.A. 23-2801(a), which provides that all property owned by married persons or acquired after marriage, regardless of whether held individually or together, "*shall become marital property*" at the time a divorce is filed. (Emphasis added.) He also ignores K.S.A. 23-2802(a), which directs that a decree divide the real and personal property of the parties to a divorce, "whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or accrued by the spouses' joint efforts."

We find Husband's logic to be flawed. Under his view, much personal property or individual accounts owned during a marriage—such as employer retirement accounts or assets purchased with funds generated from one spouse's business—would never be considered for division in a divorce. This is not the law in Kansas. Additionally, he points to no evidence in the record to demonstrate how the settlement monies were somehow directly attributable to the EEZ Container business.

Husband did not meet his burden of showing the district court abused its discretion when it found he dissipated assets. And because Husband does not dispute the amount of dissipation calculated and ultimately credited against Wife's equalization payment, we affirm the district court's findings related to Husband's dissipation of assets.

THE DISTRICT COURT'S DIVISION OF MARITAL ASSETS

In addition to his dissipation argument, Husband contends the district court abused its discretion concerning multiple aspects of its property division. He raises six claims of abuse, which can be broken down into: (1) three claims regarding the division of the marital residence, (2) two claims about the valuation of certain personal property, and (3) a final claim regarding his credit card debt. In response, Wife argues the district court's findings are supported by the record.

12

As outlined above, we review the district court's division of property for a clear abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. at 986; *In re Marriage of Rodriguez*, 266 Kan. at 352.

## I. Husband's Claims Concerning the Marital Property

Husband complains the district court improperly divided the marital property in three ways by: including a cost of sale adjustment; crediting Wife for mortgage payments made during the divorce; and crediting Wife with the amount of property taxes paid in 2021.

### A. Cost of Sale Adjustment

In his first claim regarding the marital property, Husband argues the district court abused its discretion when it included a six percent cost of sale adjustment. He reasons that the property was neither sold nor did the court order it sold, so imputing a cost of sale in calculating the net value is an abuse of discretion. Without the inclusion of the cost of sale adjustment, Husband contends the property should be valued at $444,438.

But as Wife points out, panels of this court have affirmed similar adjustments. For example, in *In re Marriage of Stewart*, No. 71,902, 1995 WL 18253693, at *2 (Kan. App. 1995) (unpublished opinion), the husband argued the trial court abused its discretion in calculating the parties' equity based on a cost of sale adjustment: "[Husband] contends the trial court abused its discretion in determining the parties' equity in the house by subtracting only one-half of the anticipated costs of sale from the fair market value. He argues the court should have subtracted the full eight percent." The panel addressed the claim despite the husband's failure to preserve it and found the district court did not abuse its discretion because it followed local guidance:

13

"The court stated it was subtracting four percent 'as kind of a compromise between cost of sale and recognition that real estate will not be sold in the near future,' as recommended by 2 Elrod, Kansas Family Law Handbook 10-7 (1990 rev. ed.). It was not an abuse of discretion to follow that recommendation. The local guidelines reprinted in the Handbook recommend that four percent be subtracted from the fair market value of a residence to be sold in the future and eight percent when the house is to be sold within one year. Because it was anticipated the house would not be sold for approximately eight years, the four percent deduction was not unreasonable." 1995 WL 18253693, at *2.

Other courts have affirmed divorce judgments that included cost of sale adjustments to various types of property. See *In re Marriage of Zillinger*, No. 123,563, 2022 WL 20359422, at *2 (Kan. App. 2022) (unpublished opinion) ("The premarital real estate was awarded to [husband] with a value of $360,00, which reflected a 20% reduction for cost of sale and income tax."); *In re Marriage of Lucas*, No. 122,204, 2021 WL 1045186, at *5 (Kan. App. 2021) (unpublished opinion) (affirming district court's property valuation in divorce and noting valuation included a seven percent cost of sale adjustment). The district court here did not provide an explanation behind its reasoning for imposing a six percent cost of sale adjustment. But when making its findings it did find it was "a fair six percent cost of sale."

And Wife also persuasively points out this adjustment is not unreasonable because she "would have to sell the house in order to realize the equity in the residence, and realtor commissions and costs of sale . . . would be deducted from the proceeds of the sale."

Husband offers no legal support for his contention the district court abused its discretion when it included a cost of sale adjustment because the home had not yet been sold. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999

14

(2018). In light of alternative, persuasive authority, we find his argument lacking and affirm the district court's inclusion of the cost of sale adjustment.

### B. Credit for Reduction in Principal

In his second claim regarding the marital property, Husband argues the district court abused its discretion when it awarded Wife a $22,227.90 credit for the "'reduction in principal amount'" she paid on the mortgage during the proceedings. Husband suggests giving her that credit "further reduces the amount of equity for the court to consider" in its equalization process. And, because Wife was awarded the home, being given both the home and credit for mortgage payments equates to "'double-dipping.'" He offers no argument regarding the amount of reduction in principal but argues the $22,227.90 should be "added to the equalization payment by [Wife] to [Husband]."

Neither party provides legal support for either of their positions on this claim— either for or against the credit for reduction in principal. At trial, the district court's explanation was simply that Wife should "certainly receive credit" as a reduction in principal on the mortgage because "[s]he's the one who made the payments."

On appeal, Wife now argues her mortgage payments during the pendency of the divorce increased the equity of the marital home, so the principal reduction should be awarded to her regardless of who remains in the residence. She suggests the credit is "similar to adjusting the value of an investment to reflect net gains and losses between the valuation date and the actual date of division."

Even without caselaw support, we find Husband's "'double-dipping'" argument has factual support in the record. In our examination of the property division, we do find error.

While Wife's general comparison of reflecting gains/losses may be a correct correlation to what occurred here, we find a fundamental flaw in Wife's, and the district court's, implementation of the concept. Although Wife and the court sought to adjust the value of the marital home by crediting to her a reduction in principal, the court did not similarly account for the increase in the home's equity when calculating the parties' equalization. In other words, Wife wants to have the home's valuation established at the time of filing the petition for divorce in 2021 (eating her cake) but, at the same time, wants credit for the reduction in mortgage principal from 2021 to 2023, without acknowledging any equal increase in home equity during that same period (and having it, still). The district court used two different timeframes to establish equity and debt—that is, home value assessed at the time of the divorce filing (along with the value of all other assets), but the value of the mortgage principal at the time of the decree.

This is, on its face, unreasonable and an error of fact by the district court, constituting a clear abuse of discretion. For this reason, we reverse the district court's decision to subtract $22,227.90 from Wife's final equalization payment and remand the issue to the district court for recalculation of the equalization in light of our decision.

## C.  Credit for 2021 Property Taxes

Husband's final claim against the district court's valuation of the marital property is not persuasive; in fact, the basis of his argument is not clear. He argues:

> "[The Journal Entry] . . . directs that [Wife] be reimbursed for one-half of the amount she paid for 2021 property taxes for the real estate, yet 100% of the real estate is set over to her. [Husband] receives no advantage for [Wife] having paid the real estate taxes, as that payment does not serve to either increase or decrease equity in the property. The amount for which [Husband] is supposed to reimburse [Wife] for this item, $7,314.62, should be divided by two, such that $3,657.31 should be added to the equalization payment to be paid by [Wife] to [Husband]."

16

We interpret that Husband suggests the district court improperly credited Wife with the entire amount of property taxes she paid in 2021. But this is not what occurred. The parties' divorce was filed in June 2021, halfway through the year. The district court ordered Wife, who paid the full amount of 2021 taxes, to be reimbursed for half the amount by Husband, and this reimbursement was accounted for in the final equalization payment. The spreadsheet detailing division of assets, the trial transcript, and the journal entry all reflect as much.

We find no clear abuse of discretion in the district court's decision. And in any event, Husband fails to support his argument with pertinent authority, or show why his argument is sound when no such authority exists. *In re Adoption of T.M.M.H.*, 307 Kan. at 912.

## II. Husband's Claims Concerning the Valuation of Guns and Jewelry

Next, Husband argues the district court abused its discretion in its valuation of the parties' personal property—specifically, their guns and jewelry. First, he argues the district court's valuation of the guns at $16,262.50 included guns Husband acquired through inheritance, and he contends the court did not "'split . . . the difference'" of the guns' value because Husband's suggested value of the non-inherited guns was only $7,525. In response, Wife argues the district court acted within its discretion when it averaged the two values presented by the parties—$25,000 gun value submitted by Wife and $7,525 submitted by Husband—because the district court heard Husband's last-minute argument contending he inherited a portion of the firearm collection, and nevertheless chose to split the valuation equally.

After acknowledging the district court "certainly has the authority to divide/assign inherited property in any way it sees fit, and under the case law, is not required to assign it to the party who inherited it," Husband argues the district court appeared to intend to

17

set over to him the entire value of the non-inherited guns but did not effectuate this apparent intent. Despite making the claim about the district court's intent, though, Husband does not designate a record sufficient to establish this point. *In re Adoption of T.M.M.H.*, 307 Kan. at 912. He simply asserts it was the district court's intent, so it must have abused its discretion.

Husband's argument is not persuasive. As Wife noted, Husband waited until the district court was finished with the majority of its findings at trial to belatedly argue the firearms were inherited from his father. The district court agreed with Wife's counsel that "the time to argue this is past," and noted it was unlikely to change its ruling on the issue, but still permitted argument. The district court first questioned Wife, finding it "has been my impression that [Wife] is incredibly forthcoming and honest, and, if that's true, let's work it out." When the court questioned Wife, she agreed with her counsel's statement that the 19 guns owned by Husband "are . . . not related to inheritance." Husband disagreed. The district judge then denied Husband's claim stating, "[M]y ruling will stand on that issue."

Based on this series of questions and answers, the district court must have found Wife's response more credible than Husband's because it took no time to consider whether it would work out the gun inheritance between the parties after she claimed the guns were not inherited. Instead, the court simply split the difference between the two parties' suggested valuations.

Husband now asks us to reweigh the evidence and credibility assessments made at the district court—a task which appellate courts do not undertake. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011). Husband presents no other claim for an abuse of discretion and therefore has not shown the district court clearly abused its discretion when dividing the firearm assets. *In re Marriage of Wherrell*, 274 Kan. at 986.

Husband also claims the district court abused its discretion when it assigned no value to the parties' jewelry, disregarding the appraisal he presented as evidence. He maintains the failure to consider the appraisal, and instead relying on testimony and spreadsheets, equates to abuse of discretion for failure to consider substantial competent evidence.

But the trial transcript contradicts Husband's claims. The district court did consider Husband's appraisal but found it "suspect," at least in part due to it being 10 years old. The district judge also found the various other pieces were gifts or premarital property:

> "As to the claim for $28,000 for the jewelry that [Wife] has I'm assuming in her possession, the Court finds, first of all, a 2011 appraisal is somewhat suspect at this point in time, that the testimony has been the anniversary and wedding rings were gifts.
> "The Court could go either way on an anniversary ring but not on a wedding ring. A wedding ring is certainly a gift.
> "The other items listed, a high school ring, a chain, and a cross were all premarital property. The Court finds no value in the jewelry that should be divided among the parties as far as Exhibit 101 is concerned.
> "[Wife] is to keep her jewelry.
> "[Husband], if he has any jewelry, it's his."

Again, Husband wrongly asks us to reweigh the evidence regarding the appraisal and valuation of the parties' jewelry. *Wolfe Electric, Inc.*, 293 Kan. at 407. Husband presents no other argument contending the district court abused its discretion, and as a result, has not met his burden of showing the district court clearly abused its discretion when it valued the jewelry. *In re Marriage of Wherrell*, 274 Kan. at 986.

### III. Husband's Claim Concerning His Credit Card Debt

For his final claim, Husband argues the district court abused its discretion when it included Wife's credit card debt in its division of property, but not his own credit card

19

debt. He suggests it "is an abuse of discretion to treat similar categories of debt in different ways."

But Husband ignores his own infirmities. According to the record, he submitted no evidence of his credit card debt at trial—his proposed property division does not include his credit card debt, nor does his domestic relations affidavit note any credit card debt, and no such statements were offered during trial. Only on appeal does he belatedly submit a figure based on an improperly attached appendix to his appellate brief. See Kansas Supreme Court Rule 6.02(b) (2024 Kan. S. Ct. R. at 36) (an appendix included with appellant's brief must consist only of "*limited extracts from the record*" on appeal). (Emphasis added.) In contrast, Wife included her own credit card debt and statement in her proposed division of property spreadsheet and exhibits submitted during her presentation of evidence to the district court at trial.

Husband's final argument is unfounded. First, this appears to be an issue raised for the first time on appeal without any explanation for its lack of preservation under Supreme Court Rule 6.02(a)(5). See *Cheffen*, 297 Kan. at 698. Second, without first presenting his credit card debt to the district court, he cannot meet his burden of designating a record sufficient to now present his claim to us. See *In re Adoption of T.M.M.H.*, 307 Kan. at 912. Because his claim is unpreserved, and he fails to designate a record sufficient to support his figures, Husband has not shown the district court clearly abused its discretion when it included Wife's, but not his, credit card debt in the final division of property. *In re Marriage of Wherrell*, 274 Kan. at 986.

WIFE'S MOTION FOR APPELLATE ATTORNEY FEES

On February 2, 2024, Wife timely moved this court to award appellate attorney fees on two bases: (1) pursuant to Kansas Supreme Court Rule 7.07(b) (2024 Kan. S. Ct. R. at 52), because the district court had statutory authority to permit fees; and (2) because

20

she claims Husband's appeal was frivolous under Rule 7.07(c). Husband did not respond to Wife's motion.

Kansas courts cannot award appellate attorney fees unless a statute authorizes the award or there is an agreement between the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013); see Supreme Court Rule 7.07(b)(1). Whether a court has the authority to award attorney fees is a question of law over which an appellate court has unlimited review. 297 Kan. at 162. Here, the district court had the authority to award attorney fees under K.S.A. 23-2715, which permits courts to award fees in divorce proceedings. K.S.A. 23-2715 ("Costs and attorney fees may be awarded to either party as justice and equity require.").

And, on this authority, the district court awarded Wife $5,000 in attorney fees after it divided the property, finding this sum was reasonable "because of the unnecessary expense based upon discovery disputes." Later, the district court awarded Wife an additional $2,500 in attorney fees and sanctions after Husband filed a pro se motion to modify their parenting time agreement with Beau, and the court found several of his arguments had already been considered in prior hearings.

As for Wife's allegation that Husband's appeal was frivolous under Supreme Court Rule 7.07(c), our Supreme Court has defined a frivolous appeal as "'[o]ne in which no justiciable question has been presented and appeal is readily recognized as devoid of merit in that there is little prospect that it can ever succeed.'" *Blank v. Chawla*, 234 Kan. 975, 982, 678 P.2d 162 (1984) (quoting Black's Law Dictionary 601 [5th ed. 1979]); see *McCullough v. Wilson*, 308 Kan. 1025, 1037, 426 P.3d 494 (2018) (refusing to disturb this court's order denying motion for attorney fees under Supreme Court Rule 7.07[c]).

Wife contends Husband has "repeatedly bullied and harassed [her], obstructed discovery, unduly delayed proceedings, and otherwise needlessly increased the cost of

21

litigation since the underlying divorce was filed." She claims Husband's pattern of behavior continued on appeal and argues Husband's appellate brief presented no justiciable question.

We choose not to grant Wife's motion based on Supreme Court Rule 7.07(c). While Husband's appeal is not entirely successful, we cannot say it presented no justiciable question. Husband's Issue I presented an issue of law that required analysis, even if his claim failed. And on the issue of the mortgage principal, we reverse the district court's decision.

But we grant Wife's motion for attorney fees in the amount of $3,120 under Supreme Court Rule 7.07(b)(1). Wife was largely successful on appeal, this is a case in which the district court had authority to award attorney fees, and her motion complies with the requirements for such motions under Rule 7.07(b)(2).

Affirmed in part, reversed in part, and remanded with directions.